**2021 IL 125738**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 125738)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee v.
RECARDO JOHNSON, Appellant.

*Opinion filed April 15, 2021.*

JUSTICE MICHAEL J. BURKE delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Garman, Theis, and Neville concurred in the judgment and opinion.

Justice Carter dissented, with opinion, joined by Justice Overstreet.

**OPINION**

¶ 1    Defendant, Recardo Johnson, filed a *pro se* petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)), seeking relief from his conviction of unlawful restraint (see 720 ILCS 5/10-3 (West 2006)). By the time

defendant filed his petition, he had discharged his sentence for unlawful restraint, but he was in prison for failing to register as required by the Child Murderer and Violent Offender Against Youth Registration Act (Violent Offender Act) (see 730 ILCS 154/1 *et seq.* (West 2006)).[1]

¶ 2 The two convictions are related in that the age of the victim of the unlawful restraint triggered the registration requirement upon defendant's release. But defendant's duty to register, which was governed by the Violent Offender Act, was not ordered by the circuit court or reflected in the judgment entered on the unlawful restraint conviction.

¶ 3 The postconviction court summarily dismissed the petition as frivolous and patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2016)). The Cook County circuit court determined that, although defendant was currently imprisoned for the registration violation, he lacked standing to seek postconviction relief from the unlawful restraint conviction because he was no longer "imprisoned in the penitentiary" for that offense. *Id.* § 122-1(a). The appellate court affirmed the summary dismissal on that basis. 2019 IL App (1st) 163169, ¶ 29.

¶ 4 Defendant appeals and asks this court to remand the cause for further proceedings under the Act. Defendant raises two issues: (1) whether the circuit court may consider standing as the sole basis for the summary dismissal of a petition at the first stage of proceedings under the Act and (2) whether his *pro se* petition alleged sufficient facts relevant to standing to advance the petition to the second stage. For the following reasons, we affirm the summary dismissal.

¶ 5 I. BACKGROUND

¶ 6 A. The Guilty Plea

¶ 7 On October 2, 2007, defendant agreed to plead guilty to unlawful restraint (see 720 ILCS 5/10-3 (West 2006)) in exchange for the State's recommendation of a two-year prison sentence and the dismissal of another charge. Before defendant

---

[1] In 2012, the statute was renamed the Murderer and Violent Offender Against Youth Registration Act. Pub. Act 97-154, § 30 (eff. Jan. 1, 2012).

entered his plea, the circuit court informed him that unlawful restraint is a Class 4 felony, punishable by one to three years' imprisonment. However, the court informed him, if defendant had been found guilty of the same or greater class felony within the last 10 years, he would be eligible for a maximum prison term of 6 years. The court also told defendant that, upon his release, he would be subject to one year of mandatory supervised release (MSR).

¶ 8        Defendant entered his plea, stating that he understood he was giving up certain rights by pleading guilty, including his right to plead not guilty and proceed to a jury trial where the State would bear the burden of proving him guilty beyond a reasonable doubt. Defendant confirmed that he was not threatened or promised anything in exchange for his plea.

¶ 9        The State provided the following factual basis for the plea. On July 25, 2007, defendant and a co-offender approached the victim, threatened him with a gun, detained him, and rummaged through his pockets. The factual basis did not specify the victim's age, and the circuit court did not inform defendant that a conviction of unlawful restraint committed against a victim under the age of 18 would trigger a statutory requirement to register under the Violent Offender Act (see 730 ILCS 154/10 (West 2006)).

¶ 10       The circuit court found that defendant was pleading guilty freely and voluntarily to unlawful restraint, and the court accepted the plea. The court imposed a two-year prison sentence and admonished defendant of his right to a direct appeal. Defendant did not avail himself of that right.

¶ 11                              B. The Postconviction Petition

¶ 12       On July 18, 2016, almost nine years after the two-year prison sentence was imposed, defendant used a form to file a *pro se* petition for leave to file a late postconviction petition in case No. 07-CR-1722301, the unlawful restraint proceeding. Defendant asserted that he was presently incarcerated, he had been incarcerated for approximately one year, and the lateness of his filing was not due to his culpable negligence.

¶ 13     Defendant alleged the following errors in the guilty plea proceedings: (1) the age of the victim was not stated in court, (2) the circuit court failed to inform defendant of his obligation to register under the Violent Offender Act, (3) his plea counsel rendered ineffective assistance for failing to inform him of the registration requirement, (4) the prosecutor coerced the victim to falsely accuse defendant of committing unlawful restraint, and (5) the circuit court improperly excused the victim's family and defendant's family from the courtroom.

¶ 14     The circuit court summarily dismissed the petition on the ground that defendant lacked standing because he had fully discharged his sentence for unlawful restraint. The court observed that, pursuant to section 5-8-1 of the Unified Code of Corrections (730 ILCS 5/5-8-1 (West 2006)), defendant had been sentenced to two years' imprisonment and one year of MSR. The court concluded that, "[c]onsidering [defendant's] sentence and his arraignment date of September 4, 2007, it appears he completed both his term of imprisonment and [MSR] at least prior to 2011, whether or not he received day-for-day good conduct credit." See 730 ILCS 5/3-6-3(a)(2.1) (West 2006).

¶ 15     The court referred to the Department of Corrections (DOC) website to confirm that defendant had discharged his sentence for unlawful restraint. The court discovered that, at the time defendant filed his petition, he was independently serving "a term of two years of imprisonment for failure to register" under the Violent Offender Act in case No. 14-CR-1312801. The court observed, "[a]long with the record that [defendant] is currently imprisoned under case [No.] 14-CR-1312801, the IDOC website corroborates his sentence [for unlawful restraint] has in fact been completed."

¶ 16     The court, citing *People v. Pack*, 224 Ill. 2d 144, 150 (2007), stated that the Act "and its remedies are not available to petitioners who have completed their sentences and merely seek to purge their criminal records." The court determined the petition must be dismissed as frivolous and patently without merit because defendant was "no longer imprisoned or otherwise in the custody of the [DOC]" as it related to the case in which his petition claimed error.

¶ 17                            C. The Appellate Court Proceedings

¶ 18        The appellate court affirmed the summary dismissal. First, the court held that
"standing relates to the 'substantive virtue' of a postconviction claim and therefore
may be an appropriate consideration for the first stage of postconviction
proceedings." 2019 IL App (1st) 163169, ¶¶ 18-19 (citing *People v. Hommerson*,
2014 IL 115638, ¶ 11). Second, the court held that defendant's petition failed to
allege sufficient facts to potentially establish standing under the Act. The court
concluded that defendant's imprisonment at the time of filing was not the direct
result of the unlawful restraint conviction because the Violent Offender Act's
registration requirement is not part of a defendant's criminal sentence for the
underlying offense. *Id.* ¶ 28. The court noted,

> "Although in some cases the issue of standing may be nuanced enough that it
> would be inappropriate for the circuit court to dismiss a petition at the first
> stage, that is simply not the case here. [Defendant] does not dispute that his
> sentence and MSR for the 2007 conviction are both completed, and his counsel
> cannot point to any legal support for an argument that the registration
> requirement he violated was imposed as part of [defendant's] criminal sentence
> for the 2007 conviction. In short, there is no arguable basis in fact or in law that
> would give [defendant] standing to challenge his 2007 conviction at this point."
> *Id.* ¶ 29.

¶ 19        Defendant petitioned for leave to appeal pursuant to Illinois Supreme Court
Rule 315 (eff. Oct. 1, 2019). We allowed the petition.


¶ 20                                    II. ANALYSIS

¶ 21                            A. The Post-Conviction Hearing Act

¶ 22        Defendant appeals the summary dismissal of his *pro se* postconviction petition.
The Act provides a method by which "any person imprisoned in the penitentiary"
may assert that his or her conviction was the result of a substantial denial of his or
her rights under the United States Constitution or the Illinois Constitution or both.
725 ILCS 5/122-1(a)(1) (West 2016); *People v. Hodges*, 234 Ill. 2d 1, 9 (2009);

*People v. Pendleton*, 223 Ill. 2d 458, 471 (2006) (citing *People v. Whitfield*, 217 Ill. 2d 177, 183 (2005)).

¶ 23    A defendant who petitions for postconviction relief bears the burden of establishing that a substantial deprivation of his or her constitutional rights occurred "in the proceedings that produced the conviction or sentence being challenged." *Pendleton*, 223 Ill. 2d at 471; 725 ILCS 5/122-1(a)(1) (West 2016).

¶ 24    In noncapital cases, like this one, the Act contemplates three stages. *Pendleton*, 223 Ill. 2d at 471-72. At the first stage, the postconviction court has 90 days to examine the petition. *Id.* at 472. "If the petitioner is sentenced to imprisonment and the court determines the petition is frivolous or is patently without merit, it shall dismiss the petition in a written order, specifying the findings of fact and conclusions of law it made in reaching its decision." 725 ILCS 5/122-2.1(a)(2) (West 2016); *Pendleton*, 223 Ill. 2d at 472.

¶ 25    The first stage of postconviction proceedings presents a "low threshold," requiring only that the petitioner plead sufficient facts to assert an arguably constitutional claim. *People v. Brown*, 236 Ill. 2d 175, 184 (2010). The court must accept as true and liberally construe all the allegations in the petition unless contradicted by the record. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001).

¶ 26    A petitioner need only allege sufficient facts to state the "gist" of a constitutional claim for the petition to be advanced to the second stage. *Hodges*, 234 Ill. 2d at 9. A petition is frivolous or patently without merit if it "has no arguable basis either in law or in fact." *Id.* at 16. "A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.*

¶ 27    If the petition survives this initial review, the process moves to the second stage, where the postconviction court appoints counsel for a petitioner who cannot afford counsel. 725 ILCS 5/122-4 (West 2016). Appointed counsel may make any amendments that are necessary to the petition previously filed by the *pro se* defendant. *People v. Perkins*, 229 Ill. 2d 34, 42 (2007). After counsel has reviewed the petition and, if needed, amended the petition, the State may file a motion to dismiss or file an answer. 725 ILCS 5/122-5 (West 2016); *Pendleton*, 223 Ill. 2d at 472. If the State moves to dismiss, the postconviction court may hold a dismissal

hearing as part of the second stage. *People v. Coleman*, 183 Ill. 2d 366, 380-81 (1998). If the petition is not dismissed, it advances to a third-stage evidentiary hearing, which is not at issue in this case.

¶ 28 When, as here, the petition is ruled upon without an evidentiary hearing, the lower court's decision is subject to the *de novo* standard of review. See *Hommerson*, 2014 IL 115638, ¶ 6 (first-stage summary dismissal); *Pack*, 224 Ill. 2d at 147. *De novo* review shows no deference to the postconviction court's judgment or reasoning. *People v. Vincent*, 226 Ill. 2d 1, 14 (2007).

¶ 29                                    B. Standing

¶ 30 This appeal presents the issues of whether the circuit court may cite a lack of standing as the sole basis for summarily dismissing a postconviction petition at the first stage and, if so, whether defendant alleged sufficient facts relevant to standing to advance the petition to the second stage.

¶ 31 Before resolving these issues, we explain what we mean by a postconviction petitioner's "standing" to seek relief under the Act. There is common-law standing, which requires an injury in fact to a legally recognized interest (*In re Estate of Burgeson*, 125 Ill. 2d 477, 486 (1988)), and there is statutory standing, which requires the fulfillment of statutory conditions to sue for legislatively created relief. *Wilson v. Tromly*, 404 Ill. 307, 310 (1949). The "legislature, having conferred a right of action *** may determine who shall sue, and the conditions under which the suit may be brought." *Id.*

¶ 32 Proceedings instituted under the Act implicate statutory standing principles. In the Act, the legislature created a right of action for postconviction relief. In section 122-1(a) of the Act, the legislature prescribed a condition for petitioning for such relief: "[a]ny person imprisoned in the penitentiary may institute a proceeding under this Article." 725 ILCS 5/122-1(a) (West 2018). Therefore, defendant's "standing" in this case depends on whether he fulfilled the statutory condition of being "imprisoned in the penitentiary" when he instituted the postconviction proceedings. See *People v. Coe*, 2018 IL App (4th) 170359, ¶ 43.

¶ 33       We acknowledge that standing is ordinarily an affirmative defense that must be pleaded and proven by the defendant (*Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 252 (2010)), which is the role played by the State in postconviction proceedings. But the legislature chose to create a procedural framework in the Act in which section 122-2.1(a)(2) expressly authorizes summary dismissal, without input from the State, if the petitioner has not fulfilled the statutory conditions of that section. This court has consistently adhered to the notion that our legislature may attach such conditions to the relief it creates. *Wilson*, 404 Ill. at 310.

¶ 34       Defendant argues that the assessment of a petitioner's standing under the Act should be reserved for the second stage of postconviction proceedings, because standing is unrelated to the first-stage inquiry into whether the petitioner has stated the gist of a constitutional claim. He asserts that, because "[t]he legislature intended that the circuit court at the first stage would look to whether the petition allege[d] a constitutional deprivation" (*People v. Allen*, 2015 IL 113135, ¶ 33), premature dismissals unrelated to the underlying claim should be avoided.

¶ 35       In support of his position, defendant contends that any consideration of standing at the first stage contravenes the plain and ordinary meaning of the Act's provisions for filing and summarily dismissing a petition. If this court can ascertain legislative intent from the plain and ordinary meaning of the statutory language itself, that intent must prevail, and we will not depart from the statutory language by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent. *People v. Boclair*, 202 Ill. 2d 89, 100 (2002). To ascertain the legislature's intent, we may consider not only the language of the statute but also the purpose and the necessity for the law, the evils sought to be remedied, and the goals to be achieved. *People v. Blair*, 215 Ill. 2d 427, 443 (2005).

¶ 36       Defendant suggests that *pro se* petitioners may not even know to allege facts relevant to standing because the Act does not explicitly require such allegations. He emphasizes that the term "standing" is used neither in section 122-1(a)(1), which contains the only explicit description of who may seek relief in noncapital cases, nor in section 122-2, which specifies the contents of the petition. See 725 ILCS 5/122-1(a)(1), 122-2 (West 2016).

¶ 37       Indeed, the term "standing" appears nowhere in the Act, but imprisonment in the penitentiary remains a statutory condition for petitioning for relief under the

- 8 -

Act, as illustrated by *People v. Carrera*, 239 Ill. 2d 241, 245 (2010). In *Carrera*, we considered whether the defendant had standing to pursue postconviction relief under the Act even though he had served his sentence on the conviction that he sought to challenge in his petition. *Id.* at 253. We held that, because the defendant had fully served his underlying sentence before filing his petition, his liberty was not curtailed by the State in any way and he was not a person "imprisoned in the penitentiary," as required to obtain postconviction relief. *Id.* Thus, a petitioner loses standing to seek relief under the Act if he is no longer "imprisoned in the penitentiary" because he has fully discharged his sentence for the challenged conviction. *Id.*

¶ 38                              1. *Boclair* and *Hommerson*

¶ 39      Defendant next contends that allowing summary dismissal for lack of standing is inconsistent with this court's decisions barring summary dismissal for matters unrelated to the underlying constitutional claim. See *Boclair*, 202 Ill. 2d 89 (untimeliness under section 122-1(c) (725 ILCS 5/122-(c) (West 2000))); *Hommerson*, 2014 IL 115638 (lack of verification affidavit under section 122-1(b) (725 ILCS 5/122-1(b) (West 2010))). The State responds that, if a postconviction petitioner clearly lacks standing, the petition is necessarily frivolous and patently without merit. We agree with the State.

¶ 40      In *Boclair*, we held that a petition may not be dismissed at the first stage solely because it is untimely; the petition's untimeliness should be left for the State to assert during the second stage. *Boclair*, 202 Ill. 2d at 102. We reasoned that, if the legislature had intended to allow summary dismissal based on untimeliness, it would have so provided in section 122-2.1(a)(2), which prescribes first-stage dismissal. *Id.* at 100-01. By instead addressing untimeliness in section 122-1(c), the legislature indicated an intent to treat timeliness and frivolousness differently. *Id.* at 101.

¶ 41      In *Hommerson*, we likewise held a petition may not be dismissed at the first stage solely because it is not verified by affidavit as required by section 122-1(b). *Hommerson*, 2014 IL 115638, ¶ 11. "Allowing a trial judge to *sua sponte* dismiss a petition on that ground conflicts with our prior holdings that, at the first stage of proceedings, the court considers the petition's substantive virtue rather than its

procedural compliance." *Id.*; *Boclair*, 202 Ill. 2d at 102. Allowing dismissal for lack of a verification affidavit is at odds with a first-stage determination of whether the petition alleges a constitutional claim. And as with timeliness, the verification affidavit requirement and the frivolousness provision are in separate sections of the Act; the separation evinces the legislative intent to distinguish them. *Hommerson*, 2014 IL 115638, ¶ 10. The State, at the second stage, may move to dismiss the petition based on any deficiency in compliance with section 122-1(b)'s verification affidavit requirement. *Id.* ¶ 11 (citing *People v. Cruz*, 2013 IL 113399 (the State's failure to object to the postconviction petition's lack of a notarized verification affidavit resulted in forfeiture, and the point could not be raised on appeal)).

¶ 42　　We held that allowing summary dismissal for lack of a verification affidavit contravenes the legislature's intent in passing the Act, which is to provide incarcerated individuals with a means of asserting that their convictions were the result of a substantial denial of their constitutional rights. *Id.* ¶ 12 (citing 725 ILCS 5/122-1(a) (West 2010)). Construing the statute as requiring a verification affidavit at the first stage frustrates the legislature's intent to provide incarcerated individuals with this avenue of redress. *Id.*

¶ 43　　Defendant argues that standing should be treated like timeliness and the verification affidavit because the requirements for all three are found in section 122-1, which is separate from the summary dismissal provision. Compare 725 ILCS 5/122-1(a)(1), (b), (c) (West 2016), with *id.* § 122-2.1(a)(2). However, standing can be distinguished from timeliness and the verification affidavit in several ways.

¶ 44　　First, section 122-2.1(a)(2) mentions neither timeliness nor the verification affidavit, but it refers explicitly to imprisonment, the absence of which deprives a person of standing under the Act. *Id.* § 122-2.1(a)(2) ("If the petitioner is sentenced to imprisonment and the court determines the petition is frivolous or is patently without merit, it shall dismiss the petition ***.").

¶ 45　　Second, neither timeliness nor the verification affidavit requirement is inherently an element of the right to file a petition, as those requirements are set forth in section 122-1(c) and 122-1(b), respectively. By contrast, section 122-1(a) explicitly mentions the petitioner's imprisonment as a condition of filing a petition. *Id.* § 122-1(a) ("Any person imprisoned in the penitentiary may institute a

proceeding ***.). To have standing under the Act, a petitioner must be "imprisoned in the penitentiary" for the challenged offense. *Carrera*, 239 Ill. 2d at 253.

¶ 46     Third, timeliness is distinguishable from standing in that section 122-1(c) permits an untimely petition if the delay is not due to the petitioner's culpable negligence, but the Act does not prescribe an exception for a petitioner without standing. On a related point, assessing a petitioner's culpable negligence under section 122-1(c) necessarily involves a credibility determination that is not authorized at the first stage. By contrast, where there is no dispute that a petitioner's liberty is not actually restrained due to the conviction, no further inquiry into his standing is necessary.

¶ 47     2. *Blair*

¶ 48     We agree with the State that a lack of standing is more like *res judicata* and forfeiture, which are appropriate bases for first-stage dismissal. *Blair*, 215 Ill. 2d at 442-45. *Blair* held "the legislature intended that the phrase 'frivolous or *** patently without merit' encompasses *res judicata* and forfeiture." *Id.* at 445. An otherwise meritorious claim has no basis in law if *res judicata* or forfeiture bar the claim because determinations of *res judicata* and forfeiture are inherently legal determinations that may bar relief under the Act. *Id.* Where *res judicata* and forfeiture preclude a defendant from obtaining relief, such a claim is necessarily "frivolous" or "patently without merit." *Id.*

¶ 49     Unlike timeliness and the verification affidavit requirement, which involve "procedural compliance," *res judicata* and forfeiture involve conclusions of law. *Id.* at 444-46. Standing under the Act also involves a conclusion of law in that the legislature has identified who may institute proceedings and the conditions under which the proceedings may be brought. *Wilson*, 404 Ill. at 310. In the postconviction context, imprisonment in the penitentiary for the challenged offense is a necessary legal component of standing under the Act.

¶ 50     Section 122-2.1(a)(2) does not limit or qualify the type of conclusion of law that the postconviction court may consider for summary dismissal and, therefore, does not disable a judge from considering legal conclusions of *res judicata* or forfeiture. *Blair*, 215 Ill. 2d at 445-46. Consistent with *Blair*, we hold that, where a

defendant lacks standing under the Act because he is not "imprisoned in the penitentiary" (725 ILCS 5/122-1(a) (West 2016)), a claim brought under the Act is necessarily "frivolous" or "patently without merit" (*id.* § 122-2.1(a)(2)).

¶ 51                                3. The Court File

¶ 52    Defendant characterizes standing as a factual question that may not be answered at the first stage. He argues that, unlike *res judicata* and forfeiture, a petitioner's standing cannot be determined by looking just to the petition and the specific records that may be considered as part of a petition's initial examination. The circuit court, in considering a petition, may examine the court file of the proceeding in which the petitioner was convicted, any action taken by the appellate court in the proceeding, and any transcripts of such proceeding. *Id.* § 122-2.1(c).

¶ 53    In this case, the circuit court determined that defendant had discharged his sentence for unlawful restraint before he filed the petition challenging it. The court deduced from the court file that, even if defendant had not received good-conduct credit, he would have completed his two-year prison term and one year of MSR no later than 2011. There are circumstances under which a defendant might still be under sentence for an offense after the projected date of discharge, such as due to consecutive sentencing (*Pack*, 224 Ill. 2d at 152), but the circuit court ruled out that possibility. Referring to the DOC's records displayed on its website, the court confirmed that defendant filed the petition after he fully discharged his sentence for unlawful restraint. The court further confirmed that, although defendant was imprisoned when he filed his petition, he was serving a separate prison term that was not part of his sentence for unlawful restraint.

¶ 54    Defendant contends the circuit court did not adhere to section 122-2.1(c) because information outside the court file, such as the DOC's online records related to his imprisonment, should be unavailable to the postconviction court at the first stage. Defendant is correct that the Act does not authorize fact finding as part of the initial examination of the petition. However, Illinois courts often take judicial notice of facts that are readily verifiable by referring to sources of indisputable accuracy. *People v. Mata*, 217 Ill. 2d 535, 539 (2005). Frequently, the source that is judicially noticed is a court record or a public document, including the DOC's records on its website. See, *e.g.*, *Cordrey v. Prisoner Review Board*, 2014 IL

117155, ¶ 12 n.3. Thus, we reject defendant's assertion that the circuit court, by taking judicial notice of defendant's records of imprisonment as displayed on the DOC's website, was engaging in impermissible fact finding at the first stage.

¶ 55    Moreover, if the circuit court summarily dismisses a petition under the mistaken belief that the petitioner is *not* imprisoned for the challenged offense, the petitioner may take steps to establish his standing under the Act. He may file a motion to reconsider the dismissal, he may appeal to the appellate court, or he may file a successive petition as permitted by law. See *Blair*, 215 Ill. 2d at 451. These proceedings can address any unusual circumstances, such as consecutive sentencing, that might have unexpectedly pushed back the projected discharge date. One would expect the DOC website would contain this information, which explains why the circuit court took judicial notice of it here.

¶ 56    Defendant argues that summary dismissal based on standing is never appropriate because, as a policy matter, it "short circuits" two important components of the Act. He argues a petition that fails to allege sufficient facts to establish standing should be advanced to the second stage to afford the State the opportunity to waive the lack of standing in furtherance of doing justice on the claim. The same rationale would apply to the State's opportunity to waive *res judicata* or forfeiture, but *Blair* allows for summary dismissal in those instances. Defendant's position that the circuit court may not take judicial notice of the DOC website to verify his imprisonment at the first stage is inconsistent with both section 122-1(a), which confers standing only for persons imprisoned in the penitentiary, and section 122-2.1(a)(2), which expressly mentions imprisonment in the context of summary dismissal.

¶ 57    Defendant further contends that an indigent petitioner who fails to sufficiently allege standing should be appointed counsel to shape the *pro se* constitutional claim. In this case, defendant used a form stating he was "presently incarcerated in the Illinois [DOC]," but he did not mention why he was incarcerated. Defendant was imprisoned at the time for the registration violation, but he filed his petition under the case number for unlawful restraint, which gave the false impression that he was imprisoned for that offense. Advancing defendant's petition to the second stage based on this false impression would incentivize a petitioner to obfuscate or

simply falsify his status of imprisonment to avoid summary dismissal and obtain the services of appointed counsel.

¶ 58    When it is easy to ascertain that a postconviction petitioner lacks standing under the Act, there is no need to advance the petition to the second stage simply so the State may advocate dismissal based on information already available to the court. "To hold otherwise, we would be forcing courts to waste judicial resources by merely delaying the dismissal of a petition which the judge knows could never bear fruit for the petitioner." *Id.* at 446-47.

¶ 59    That said, the appellate court astutely observed that a petitioner's standing is not always obvious. See 2019 IL App (1st) 163169, ¶ 29. We agree with the court that a postconviction petition should not be summarily dismissed for lack of standing unless the assertions relevant to standing are frivolous and patently without merit. The standing issue may be nuanced enough in some instances that the petition states the gist of a meritorious claim, making it inappropriate to dismiss the petition at the first stage. However, the plain and ordinary meaning of section 122-2.1(a)(2) authorizes first-stage dismissal of a postconviction petition when the petition is clearly, obviously, and plainly without merit. See Webster's Third New International Dictionary 1654 (1993) ("patently" means "CLEARLY, OBVIOUSLY, PLAINLY."). Summary dismissal is proper where there is no arguable basis in fact or in law that would give the petitioner standing to challenge his conviction. 2019 IL App (1st) 163169, ¶ 29.

¶ 60                          C. Defendant's Petition

¶ 61    Upon concluding that the lack of standing is an appropriate basis for first-stage dismissal under the Act, we address defendant's argument that he alleged sufficient facts relevant to standing. Defendant broadly interprets the phrase "imprisoned in the penitentiary" (725 ILCS 5/122-1(a) (West 2016)) to include imprisonment for any offense "related" to the challenged conviction. Specifically, he claims standing to challenge the unlawful restraint conviction on the ground that he was "imprisoned in the penitentiary" for failure to register as required by the Violent Offender Act. Defendant concludes that the unlawful restraint conviction was tied to ongoing restraints on his liberty because his guilty plea led to the registration requirement upon his release.

- 14 -

¶ 62    "[A]ctual incarceration is not a strict prerequisite" to seek postconviction relief under the Act. *People v. West*, 145 Ill. 2d 517, 519 (1991). Those "imprisoned in the penitentiary" have been held to include defendants "who have been released from incarceration after the timely filing of their petition [citation], released on appeal bond following conviction [citation], [and] released under mandatory supervision, and sentenced to probation [citation]." *Id.*

¶ 63    West was sentenced to death in Arizona for murder, a sentence that was aggravated in part by a prior Illinois conviction for voluntary manslaughter. *Id.* at 518. West filed a postconviction petition in Illinois challenging his Illinois conviction. *Id.* This court, noting that he had completed both his sentence and MSR for his Illinois conviction, concluded that his imprisonment in Arizona was "not imprisonment within the meaning of the language in the [Act]." *Id.* at 519. This court stated that a postconviction petitioner "must be in prison for the offense he is purporting to challenge." *Id.*

¶ 64    By contrast, we held in *Pack* that the defendant was "imprisoned" for purposes of the Act when he was serving consecutive sentences of 60 and 7 years, even though he challenged the conviction that resulted in the 7-year sentence after being in prison for 13 years. *Pack*, 224 Ill. 2d at 147, 152. We observed that his status as a prisoner curtailed his liberty and that the DOC treats consecutive sentences in the aggregate. Thus, Pack's successful challenge to either conviction that resulted in his consecutive sentences would advance his release date and would accordingly have a direct effect on his liberty. *Id.* at 152.

¶ 65    We agree with the appellate court that this case is more like *West* than *Pack*. Obtaining postconviction relief from the unlawful restraint conviction would not advance defendant's release date for his conviction of violating the Violent Offender Act. Defendant was not serving a consecutive sentence. His imprisonment for the registration violation was not imprisonment within the meaning of the language in the Act, because he was not in prison for the unlawful restraint conviction he was challenging. See *West*, 145 Ill. 2d at 519.

¶ 66    Moreover, the registration requirement itself was a collateral consequence of the unlawful restraint conviction. A collateral consequence is an effect upon a defendant that the circuit court has no authority to impose, and it results from an

- 15 -

action that may or may not be taken by an agency that the trial court does not control. *People v. Delvillar*, 235 Ill. 2d 507, 520 (2009).

¶ 67    While collateral consequences are not related to the length or nature of the sentence imposed on a guilty plea, direct consequences are limited to the penal consequences of that plea, *i.e.*, the consequences that relate to the sentence imposed on that plea. *Carrera*, 239 Ill. 2d at 256 (citing *People v. Williams*, 188 Ill. 2d 365, 372-73 (1999)). Only the direct consequences of a conviction confer standing under the Act. *Id.* at 256-57.

¶ 68    For example, the exposure to deportation does not confer standing to challenge a conviction under the Act after the sentence on the underlying state conviction is fully discharged, because the defendant's custody in the Immigration and Naturalization Service is not pursuant to a judgment of a state court. *Id.* at 257. A deportation proceeding is not "a consequence that relates to the sentences imposed," so exposure to deportation does not confer standing under the Act. *Id.* at 256.

¶ 69    Consistent with *Carrera*, we hold that defendant's obligation to register under the Violent Offender Act did not confer standing because it was a collateral consequence of his unlawful restraint conviction. Violent offender registration is a matter controlled by statute and was not a requirement imposed by the circuit court. The obligation to register was not encompassed within the judgment of the unlawful restraint conviction and was not a consequence that related to the sentence imposed for that offense. See *id.*; see also *People v. Bingham*, 2018 IL 122008, ¶¶ 10, 17 (although theft conviction triggered the duty to register under the Sex Offender Registration Act (730 ILCS 150/1 *et seq.* (West 2012)), the requirement was a collateral consequence because it was "not encompassed within the judgment or any order of the trial court"). The appellate court has been equally clear that registration obligations arising under the Sex Offender Registration Act are collateral consequences that do not confer standing to challenge the underlying conviction under the Act. See, *e.g.*, *People v. Stavenger*, 2015 IL App (2d) 140885, ¶ 12 ("[W]e reject defendant's contention that he has standing under the [Post-Conviction Hearing] Act by virtue of his having to register as a sex offender.").

¶ 70    Defendant alternatively claims that he has standing to challenge his conviction of failing to register because it was premised on the registration requirement arising

from the unlawful restraint conviction. However, defendant did not seek postconviction relief from the registration violation, and he cites no authority that would support a challenge to that conviction in the context of the unlawful restraint proceedings.

¶ 71                            III. CONCLUSION

¶ 72       For the preceding reasons, we affirm the dismissal of defendant's petition at the first stage of the postconviction proceedings. First, we hold that the circuit court may summarily dismiss a petition on the ground that the defendant lacks standing under the Act. Second, we hold that the circuit court, in determining defendant's standing, did not violate the Act by taking judicial notice of the DOC's website to ascertain his status as a prisoner at the time he filed the petition. Third, we hold that defendant's obligation to register under the Violent Offender Act was a collateral consequence of the unlawful restraint conviction and, therefore, did not confer standing to challenge that conviction.

¶ 73       Judgments affirmed.

¶ 74       JUSTICE CARTER, dissenting:

¶ 75       I respectfully dissent from the majority because I disagree with the majority's holding that a circuit court may *sua sponte* summarily dismiss a postconviction petition based on lack of standing under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2016)). The plain language of the Post-Conviction Hearing Act does not permit summary dismissal on standing grounds at the first stage of postconviction proceedings. Under Illinois law, lack of standing is, and has *always* been, an affirmative defense. *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 494 (1988). The majority opinion conflates standing with a substantive analysis on the merits. Respectfully, the implications of today's decision go far beyond a construction of the Post-Conviction Hearing Act and will cause mischief in other areas of the law by ignoring the traditional meaning of standing and the timing for raising that defense.

¶ 76 The petitioner in this appeal presents a narrow question—whether a circuit court may *sua sponte* summarily dismiss a postconviction petition based on standing. Petitioner contends that the lack of standing is an improper basis to summarily dismiss a postconviction petition. I agree with petitioner.

¶ 77 Resolution of this issue requires a review of this court's interpretation of section 122-2.1(b) of the Post-Conviction Hearing Act. 725 ILCS 5/122-2.1(b) (West 2016). "Our primary objective in construing a statute is to give effect to the intention of the legislature." *People v. Hommerson*, 2014 IL 115638, ¶ 6. "To ascertain the legislature's intent, we may consider the language of the statute as well as the purpose and the necessity for the law, the evils sought to be remedied and the goals to be achieved." *Id.* The dismissal of a postconviction petition is reviewed *de novo*. *People v. Coleman*, 183 Ill. 2d 366, 388-89 (1998).

¶ 78 The Post-Conviction Hearing Act provides a three-stage process for adjudicating postconviction petitions. *People v. Pendleton*, 223 Ill. 2d 458, 471-72 (2006). At the first stage, the circuit court must determine whether the petition is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2016). As the majority correctly notes:

> "The first stage of postconviction proceedings presents a 'low threshold,' requiring only that the petitioner plead sufficient facts to assert an arguably constitutional claim. *People v. Brown*, 236 Ill. 2d 175, 184 (2010). The court must accept as true and liberally construe all the allegations in the petition unless contradicted by the record. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001)." *Supra* ¶ 25.

¶ 79 This court has long held that a petitioner need only allege sufficient facts to state the "gist" of a constitutional claim for the petition to advance to the second stage. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009); *People v. Boclair*, 202 Ill. 2d 89, 99-100 (2002). "The State does not have an opportunity to raise any arguments against the petition during this summary review stage." *Boclair*, 202 Ill. 2d at 99. As we recently explained, "a petition may be summarily dismissed as frivolous or patently without merit at the first stage only ' "if the petition has no arguable basis either in law or in fact" ' or when the petition relies on ' "an indisputably meritless legal theory or a fanciful factual allegation." ' " *People v. Knapp*, 2020 IL 124992,

- 18 -

¶ 45 (quoting *People v. Allen*, 2015 IL 113135, ¶ 25, quoting *Hodges*, 234 Ill. 2d at 16-17).

¶ 80     If a postconviction petition survives the first stage of review, at the second stage, the circuit court appoints counsel to represent an indigent petitioner, and counsel may amend the petition if necessary. *Boclair*, 202 Ill. 2d at 100. The State may then file a motion to dismiss the postconviction petition or file an answer to the petition. 725 ILCS 5/122-5 (West 2016). If the postconviction petition is not dismissed at the second stage of review, the petition advances to a third stage, where the court will conduct an evidentiary hearing on the merits of the postconviction petition. *Id.* § 122-6.

¶ 81     The central inquiry in this appeal is whether the legislature intended for standing issues to be resolved during the summary review stage of postconviction petitions. See *Hommerson*, 2014 IL 115638, ¶ 6 (noting the primary objective is to construe the statute to give effect to the legislature's intent). "If this court can ascertain legislative intent from the plain language of the statute itself, that intent must prevail. [Citation.] We will not depart from the plain language of the statute by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent." *Boclair*, 202 Ill. 2d at 100 (citing *Barnett v. Zion Park District*, 171 Ill. 2d 378, 389 (1996)).

¶ 82     Under the plain language of section 122-2.1(a)(2), a postconviction petition may be summarily dismissed *only* if it is deemed "frivolous or *** patently without merit." Section 122-2.1(a)(2) is silent regarding standing. If the legislature intended for the circuit court to *sua sponte* summarily dismiss a postconviction petition based on lack of standing, it could have specifically made such a provision in section 122-2.1(a)(2). Instead, the legislature provided that the State may file a motion to dismiss at the second stage of the proceedings. 725 ILCS 5/122-5 (West 2016.) Yet, the majority holds that the phrase "frivolous or *** patently without merit" encompasses standing issues. Respectfully, this holding ignores the plain language of the Post-Conviction Hearing Act. Moreover, if a petition arguably lacks standing, it does not mean that the petition lacks merit. Indeed, Black's Law Dictionary defines "merits" as "[t]he elements or grounds of a claim or defense; the substantive considerations to be taken into account in deciding a case, as opposed

to extraneous or technical points, esp. of procedure." Black's Law Dictionary 1185 (11th ed. 2019).

¶ 83     The legal definition of "merits" focuses on substantive claims and makes no mention of standing. This definition comports with this court's repeated emphasis on considering only the substance or the "gist" of the constitutional claim at the summary dismissal stage of the proceedings. *People v. Brown*, 236 Ill. 2d 175, 184 (2010); *Hodges*, 234 Ill. 2d at 9; *Boclair*, 202 Ill. 2d at 99-100; *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). Thus, the plain language of the Post-Conviction Hearing Act does not permit summary dismissal on standing grounds at the first stage of postconviction proceedings. I would, therefore, hold that summary dismissal was inappropriate in this case.

¶ 84     Moreover, it is well established that postconviction proceedings are civil in nature. *People v. Johnson*, 191 Ill. 2d 257, 270 (2000); *People v. Owens*, 139 Ill. 2d 351, 363 (1990). In Illinois civil proceedings, lack of standing is an affirmative defense that must be raised by the opposing party. *Greer*, 122 Ill. 2d at 494. Illinois has long recognized that standing to file suit is distinct from the underlying merits of a suit. In fact, this court has expressly rejected the federal test for standing because the federal test risked confusing the standing analysis with the merits analysis. See *id.* at 487-92. Standing is an affirmative defense that does not directly relate to the substantive merits of the underlying claim. As such, it is inappropriate for a circuit court to *sua sponte* raise the issue of standing and summarily dismiss a postconviction petition on that basis as frivolous and patently without merit. The majority decision, respectfully, conflates standing with the substantive merits of the claim and contradicts this court's decision in *Greer*. *Id.* at 491-92.

¶ 85     The majority opinion also implies that the petitioner filed his postconviction petition in the wrong case because he is currently imprisoned on a different criminal conviction. However, petitioner claims that his second conviction resulted from constitutional errors in the first conviction proceedings. According to the majority, because petitioner is no longer imprisoned on the original conviction, he lacks standing to collaterally attack that conviction despite the alleged constitutional error. A postconviction proceeding, by its very nature, is a collateral attack on a conviction. See *People v. Edwards*, 2012 IL 111711, ¶ 21; *People v. James*, 111 Ill. 2d 283, 290 (1986). The fact that the petitioner is imprisoned on a second

- 20 -

conviction as a consequence and a direct result of a claimed error of constitutional magnitude arising in his first conviction should be sufficient to establish standing.

¶ 86        I believe issues of standing, if raised by the State, must be resolved at the second stage of the proceedings. At that point, counsel may be appointed to represent the petitioner and amend the petition, the State may file a motion to dismiss based on any affirmative defense, and the parties may fully argue the merits of their respective positions. This is precisely why standing must remain as an affirmative defense and why it is inappropriate for a circuit court to rule *sua sponte* on standing during the summary dismissal stage of the postconviction process.

¶ 87        For the foregoing reasons, I respectfully dissent.

¶ 88        JUSTICE OVERSTREET joins in this dissent.