NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 240060-U

NO. 4-24-0060

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 2, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| SEAN P. COURTNEY, | ) | No. 18CF1257 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William A. Yoder, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Steigmann and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The Office of the State Appellate Defender's motion to withdraw is granted, and
the trial court's summary dismissal of defendant's *pro se* postconviction petition
is affirmed.

¶ 2    Defendant, Sean P. Courtney, filed a *pro se* postconviction petition, alleging

claims of actual innocence, ineffective assistance of counsel, and that his sentence violated due

process. The trial court summarily dismissed the petition. On appeal, the Office of the State

Appellate Defender (OSAD) was appointed to represent defendant. OSAD has filed a motion to

withdraw as appellate counsel pursuant to Illinois law, alleging there are no potentially

meritorious issues for review. See *People v. Meeks*, 2016 IL App (2d) 140509, ¶ 9. We grant

OSAD's motion and affirm the court's judgment.

¶ 3                                I. BACKGROUND

¶ 4        On December 10, 2018, defendant was charged with stalking (720 ILCS 5/12-7.3(a)(2) (West 2018)) in that he engaged in nonconsensual contact with the victim by repeatedly appearing at her residence, and he knew or should have known this course of conduct would cause a reasonable person emotional distress. On September 26, 2019, he pled guilty as part of a plea agreement in return for a sentence of 30 months' probation. At the time of the plea hearing, the trial court admonished defendant that he faced a maximum sentence of three years' imprisonment, followed by a one-year term of mandatory supervised release (MSR).

¶ 5        As a factual basis for the plea, the State asserted that, in 2015, defendant and the victim exchanged Facebook messages in which defendant indicated he wanted to engage in sexual activities with the victim, and the victim rebuffed the advances. At one point, defendant told the victim in a Facebook message that he fantasized about raping her, and she contacted the police. She then sent a message to defendant stating she had filed a police report, desired to have no contact with him, and wanted him to stop messaging her. The police talked to defendant and told him to have no further contact with the victim. In 2017, while the victim was living in St. Louis, Missouri, defendant found her on social media and sent her nude photographs of himself. She reported this incident to the police. The victim subsequently moved to Bloomington, Illinois. In December 2018, the victim heard a knock on her door. She saw a man standing outside but did not get a good look at him. The man left a business card with a note stating: "[T]he Holy Spirit told me to get you from your library in St. Louis, but I didn't, and I am sad but I'm trying to make it right." Approximately two hours later, the victim heard a scratching sound. She looked outside and saw the man who had come to her apartment earlier talking to a maintenance man. She recognized the man as defendant. The victim became very fearful, knowing defendant had found out where she lived.

¶ 6    The trial court accepted defendant's guilty plea to the charge of stalking and sentenced him pursuant to the plea agreement to 30 months' probation.

¶ 7    On February 28, 2020, the State filed a petition to revoke defendant's probation. The trial court subsequently revoked defendant's probation. On June 29, 2020, the court resentenced defendant to three years' imprisonment, followed by four years of MSR.

¶ 8    Defendant appealed, and we found the trial court violated defendant's right to due process by imposing a sentence that was longer than the maximum sentence the court admonished defendant he could receive at the time of his guilty plea. *People v. Courtney*, 2022 IL App (4th) 200495-U, ¶ 13. We noted the usual remedy for such an error would be withdrawal of defendant's guilty plea, but this remedy was not available where, as in this case, a defendant is resentenced following the revocation of probation. *Id.* ¶¶ 15-16. Instead, the trial court is typically limited in sentencing by the maximum penalty to which the defendant had originally been admonished. *Id.* ¶ 17. We found, however, it would have been impossible for the court to impose a statutorily authorized sentence of imprisonment after revoking defendant's probation while maintaining consistency with the admonishments it gave defendant at the time of his plea. *Id.* ¶ 19. This is because the statutory minimum sentence of imprisonment was one year, along with four years of MSR, while the maximum sentence to which defendant was admonished was three years of imprisonment and one year of MSR. *Id.*

¶ 9    In his prior appeal, defendant proposed as a remedy for this due process violation that we reduce his sentence to one year of imprisonment, followed by four years of MSR. *Id.* ¶ 20. We found defendant's proposal was "a reasonable one, as it comport[ed] with statutory sentencing requirements and mitigate[d] the effects of the improper admonishment." *Id.* ¶ 20. However, we found that the appropriate remedy was to remand for resentencing to give

defendant and the State the opportunity to negotiate an agreed resolution suitable to both sides and acceptable to the trial court. *Id.* We directed the trial court, in the event the parties did not agree on a resolution, to "impose a sentence that *** mitigates the effects of the improper admonishments while comporting with statutory sentencing requirements, including that any term of imprisonment must be followed by four years of MSR." *Id.*

¶ 10 On remand, defense counsel indicated the parties had agreed that defendant would be resentenced to one year of imprisonment, followed by four years of MSR. Defendant asked the trial court whether the four-year term of MSR would start from the date of resentencing. Defendant stated he had already served three years in prison and one year of MSR, and he wanted to know if that time would be counted toward the four years of MSR. The court stated that the Illinois Department of Corrections (DOC) would calculate defendant's parole date, and it could not tell defendant exactly how the DOC would calculate it. The court continued the matter to give defendant additional time to speak with his attorney and seek answers to his questions.

¶ 11 At a hearing on April 13, 2022, the parties indicated they had agreed to a resolution where defendant would be sentenced to 1 year of imprisonment and 4 years of MSR, with credit for 542 days served in custody. The trial court asked defendant if he wanted it to accept the proposal, and defendant indicated he did. The court accepted the parties' proposed agreement and sentenced defendant as stated. Defendant then asked whether any of the excess prison time would be counted toward the four years of MSR. The court stated it assumed defendant and his attorney had discussed "all of the parole options and timing." Defendant indicated they discussed it, but there was still "some ambiguity amongst the parole people and [his] attorney." Defendant asked the court if it had knowledge of this. The court replied that it

had accepted the agreed proposal and sentenced defendant accordingly. Defendant did not appeal the sentence.

¶ 12		On May 4, 2023, defendant, *pro se*, filed a form document titled "Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* by a Person in State Custody," which requested that defendant be immediately released from custody. It stated the one-year prison sentence, followed by four years of MSR, that the trial court imposed violated defendant's right to due process because it exceeded the maximum sentence which he was admonished about at the time of his plea.

¶ 13		On July 26, 2023, defendant, *pro se*, filed a postconviction petition pursuant to section 122-1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/122-1 (West 2022)). In the petition, defendant asserted that he was actually innocent of stalking because he did not make two attempts to contact the victim, as required by statute. He stated the second time he went to the victim's residence, he was merely attempting to retrieve a note he left the first time. He alleged he did not raise his claim of actual innocence earlier due to ineffective assistance of counsel. Defendant stated that his plea counsel "suggested" that defendant could be found guilty because the State could prove he was at the victim's apartment complex, and he "did not raise the grounds that [defendant] was not actually technically in violation of any law."

¶ 14		Defendant also alleged in the postconviction petition that his sentence violated his right to due process. Defendant stated: "This current sentence 1yr plus 4yrs of MSR is also, clearly inappropriately long because it is greater than my plea. The Court should have never accepted this as an appropriate sentence, for this reason. This is clearly stated in the Appellate Opinion." Defendant also stated that he had previously served three years' imprisonment at 50% and two years of MSR, which satisfied his current sentence of one year of imprisonment and four

years of MSR. Defendant asserted: "[I]t is only a disqualification of time served and loss of good time inappropriately which is keeping me at this point."

¶ 15    On October 12, 2023, the trial court entered an order summarily dismissing the *pro se* postconviction petition filed on July 26, 2023, finding the claims raised in the petition were frivolous or patently without merit. This appeal followed.

¶ 16                                II. ANALYSIS

¶ 17    On appeal, OSAD was appointed to represent defendant. However, OSAD has filed a motion to withdraw and a memorandum in support, identifying issues that might arguably support an appeal but concluding they have no merit. OSAD asserts it has informed defendant by phone and letter of its motion to withdraw and has mailed a copy of the motion to defendant. Defendant filed a response to the motion, which we have considered. After examining the record, we grant OSAD's motion and affirm the trial court's judgment.

¶ 18    At the first stage of postconviction proceedings, the trial court shall summarily dismiss a postconviction petition within 90 days of its filing if the court determines the petition is frivolous or is patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2022). "A petition is frivolous or patently without merit if it has no arguable basis either in law or in fact." (Internal quotation marks omitted.) *People v. Johnson*, 2021 IL 125738, ¶ 26. If the court does not summarily dismiss the petition within 90 days, it must docket the petition for further proceedings. 725 ILCS 5/122-2.1(b) (West 2022).

¶ 19    "The first stage of postconviction proceedings presents a 'low threshold,' requiring only that the petitioner plead sufficient facts to assert an arguably constitutional claim." *Johnson*, 2021 IL 125738, ¶ 25. Unless the allegations in the petition are rebutted by the record, the court must accept the allegations as true and liberally construe them. *Id.* In order to advance

to the second stage, a petition "need only allege sufficient facts to state the 'gist' of a constitutional claim." *Id.* ¶ 26.

¶ 20    OSAD has indicated that it considered arguing the postconviction petition should have survived summary dismissal because it stated the gist of the following claims: (1) defendant was actually innocent of the charged offense, (2) defendant's plea was rendered involuntary due to ineffective assistance of counsel, and (3) defendant's agreed sentence violated due process or the appellate court's mandate. OSAD also considered raising the issue of whether the trial court failed to rule on the postconviction petition within 90 days of its filing. However, OSAD has concluded that all of these potential issues lack merit. For the reasons that follow, we agree.

¶ 21                                    A. Actual Innocence

¶ 22    OSAD indicates that it considered arguing that the trial court erred by summarily dismissing the *pro se* postconviction petition because defendant presented the gist of a claim of actual innocence. However, OSAD has concluded that such an argument would lack merit. In the petition, defendant argued he was actually innocent of stalking because his "story throughout" was that he did not attempt to make contact with the victim when he scratched at her door the second time he went to her apartment. Defendant asserts he was merely attempting to retrieve the note he left there the first time. Defendant contends the law required that he make two attempts to contact the victim in order to commit the offense of stalking, and, since he did not attempt to contact her the second time he went to her apartment, he "clearly broke no law in the first place."

¶ 23    A postconviction petitioner may assert a freestanding claim of actual innocence based on newly discovered evidence pursuant to the due process clause of the Illinois Constitution. *People v. Ortiz*, 235 Ill. 2d 319, 333 (2009). "[T]he evidence in support of the

claim must be newly discovered; material and not merely cumulative; and 'of such conclusive character that it would probably change the result on retrial.' " *Id.*

¶ 24    Here, defendant fails to present any newly discovered evidence that would support a claim of actual innocence. His alleged subjective intent not to make contact with the victim the second time he went to her residence was known to him at the time of his plea. However, defendant chose to plead guilty rather than attempt to present this argument at a trial, where the trier of fact could have considered it. Accordingly, we agree with OSAD that it cannot be argued that defendant's petition stated the gist of a freestanding claim of actual innocence.

¶ 25                          B. Ineffective Assistance of Counsel

¶ 26    OSAD next asserts that it considered raising a claim that defendant's guilty plea was rendered involuntary due to ineffective assistance of plea counsel but has concluded that such an argument would be meritless. In the petition, defendant alleged that his plea counsel "suggested that since the [S]tate could prove that [he] was at [the victim's] apartment complex, [he] could be found guilty." Defendant asserted that plea counsel "did not raise the grounds that [defendant] was not actually technically in violation of any law."

¶ 27    A defendant challenging a guilty plea on the basis of ineffective assistance of counsel must "establish that counsel's performance fell below an objective standard of reasonableness and the defendant was prejudiced by counsel's substandard performance." *People v. Hall*, 217 Ill. 2d 324, 334-35 (2005). "An attorney's conduct is deficient if the attorney failed to ensure that the defendant's guilty plea was entered voluntarily and intelligently." *Id.* at 335. "To establish the prejudice prong of an ineffective assistance of counsel claim in these circumstances, the defendant must show there is a reasonable probability that, absent counsel's errors, the defendant would have pleaded not guilty and insisted on going to trial." *Id.*

¶ 28       To prove defendant guilty of stalking, as charged in the instant case, the State was required to prove that defendant knowingly engaged in a "course of conduct" directed at the victim, and he knew or should have known that this course of conduct would cause a reasonable person to suffer emotional distress. 720 ILCS 5/12-7.3(a)(2) (West 2018). Pursuant to the statute:

> " 'Course of conduct' means 2 or more acts, including but not limited to acts in which a defendant directly, indirectly, or through third parties, by any action, method, device, or means follows, monitors, observes, surveils, threatens, or communicates to or about, a person, engages in other non-consensual contact, or interferes with or damages a person's property or pet." *Id.* § 12-7.3(c)(1).

The statute further provides:

> "'Non-consensual contact' means any contact with the victim that is initiated or continued without the victim's consent, including but not limited to being in the physical presence of the victim; appearing within the sight of the victim; approaching or confronting the victim in a public place or on private property; appearing at the workplace or residence of the victim; entering onto or remaining on property owned, leased, or occupied by the victim; or placing an object on, or delivering an object to, property owned, leased, or occupied by the victim." *Id.* § 12-7.3(c)(6).

¶ 29       Here, the factual basis for defendant's guilty plea stated that defendant went to the victim's apartment twice on the day of the incident—knocking the first time and scratching at the door the second time. The factual basis further indicated the victim and law enforcement had previously told defendant not to contact the victim. While defendant alleged in the postconviction petition that, on his second visit to the victim's apartment, he was only trying to

retrieve the note he had previously left, the statute provides that merely appearing at the victim's residence without her consent can constitute nonconsensual contact. See *id.* § 12-7.3(c)(1), (6). Thus, counsel's alleged advice to defendant that he could be found guilty for merely being at the victim's apartment was essentially correct, and defendant has not stated the gist of a claim that his plea was involuntary because plea counsel failed to advise him that his actions did not satisfy the elements of the offense of stalking.

¶ 30                                    C. Sentence

¶ 31          OSAD asserts that it considered arguing that defendant's postconviction petition stated the gist of a claim that the agreed sentence imposed at the resentencing hearing violated due process or this court's mandate in defendant's prior appeal, but it concluded that such a claim would lack merit. In his postconviction petition, defendant argued that his current sentence of one year of imprisonment, plus four years of MSR, violated his right to due process because it exceeded the maximum sentence of which he was advised at the time of his plea—three years' imprisonment, plus one year of MSR. Defendant asserted: "The Court should never have accepted this as an appropriate sentence, for this reason. This is clearly stated in the Appellate Opinion."

¶ 32          However, in *Courtney*, 2022 IL App (4th) 200495-U, ¶ 20, we expressly found that the imposition of a sentence of one year of imprisonment, followed by four years of MSR, was a reasonable remedy for the due process violation that occurred when the trial court incorrectly admonished defendant as to the MSR term he faced, as it mitigated the effects of the improper admonishment while comporting with the statutory sentencing requirements. We stated the parties could choose to adopt this remedy on remand. *Id.* Accordingly, defendant failed to

state the gist of a claim that the agreed sentence entered on remand violated due process or our mandate.

¶ 33     Defendant also asserts in his petition that he has satisfied his current sentence because he has served three years' imprisonment at 50% and two and a half years of MSR as part of the sentence initially imposed upon the revocation of his probation. Defendant contends that it was "only a disqualification of time served and a loss of good time inappropriately which [was] keeping [him] at this point." However, as OSAD notes in its motion to withdraw, defendant did not provide any explanation in his petition as to why it was inappropriate for the DOC to revoke his MSR or good time credit, and, accordingly, OSAD cannot argue that defendant stated the gist of a claim that his continued incarceration is the result of a violation of his constitutional rights.

¶ 34                         D. Failure to Rule Within 90 Days

¶ 35     OSAD states that it considered raising the issue that the trial court erred by failing to rule within 90 days on the first postconviction petition defendant filed on May 4, 2023, but it concluded such an argument would lack merit because the filing of the second postconviction petition on July 26, 2023, restarted this 90-day period. See *People v. Watson*, 187 Ill. 2d 448, 451 (1999) ("[W]hen a defendant who has filed an original post-conviction petition subsequently files an amended petition, the 90-day period in which the court must examine the defendant's petition and enter an order thereon is to be calculated from the filing of the amended petition.").

¶ 36     We find counsel's statement of the law on this point to be accurate and agree with his conclusion that the trial court did not violate the 90-day requirement set forth in section 122-2.1(a) of the Code (725 ILCS 5/122-2.1(a) (West 2022)). We note, however, that it does not appear that the petition filed on May 4, 2023, can properly be considered a postconviction petition at all. That petition did not invoke the Post-Conviction Hearing Act (725 ILCS 5/122-1

*et seq.* (West 2022)), but rather indicated that it was a petition for a writ of *habeas corpus* filed pursuant to title 28, section 2254 of the United States Code (28 U.S.C. § 2254 (2018)). Accordingly, the filing of that petition did not implicate the 90-day requirement set forth in section 122-2.1(a) of the Code (725 ILCS 5/122-2.1(a) (West 2022)).

¶ 37                                    III. CONCLUSION

¶ 38        For the reasons stated, we grant OSAD's motion to withdraw and affirm the trial court's judgment.

¶ 39        Affirmed.