2023 IL App (1st) 211080

No. 1-21-1080

Filed August 17, 2023

Fourth Division

---

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 06 CR 5493 |
| | ) | |
| CHARLES LEE, | ) | Honorable |
| | ) | Luciano Panici, |
| Defendant-Appellant. | ) | Judge, Presiding. |

---

JUSTICE MARTIN delivered the judgment of the court, with opinion.
Presiding Justice Lampkin and Justice Rochford concurred in the judgment and opinion.

## OPINION

¶ 1    After pleading guilty to aggravated vehicular hijacking, Charles Lee was sentenced to a mandatory term of natural life pursuant to the Habitual Criminal Act. Lee moved to withdraw his guilty plea, claiming he received ineffective assistance of counsel since his lawyer argued, in error, that the life sentence was discretionary. The trial court denied Lee's motion to withdraw his guilty plea and Lee appeals.

¶ 2                                I. BACKGROUND

¶ 3    Charles Lee was charged with aggravated vehicular hijacking and other related offenses in a 20-count indictment. The indictment stemmed from a December 2005 incident in which Lee,

while armed with a firearm, stole the victim's car with her infant inside and then led police on a chase ending in a crash. This was not Lee's first brush with the law. He had numerous prior felony convictions, including two for armed robbery: one committed in 1993 and the other in 1996.

¶ 4　　Armed robbery, like aggravated vehicular hijacking, is a Class X offense. Class X is the most serious classification of crime in Illinois short of first degree murder. The Habitual Criminal Act (720 ILCS 5/33B-1 (West 2004); see Pub. Act 95-1052 (eff. July 1, 2009) (renumbering 720 ILCS 5/33B-1 as 730 ILCS 5/5-4.5-95)) mandates a life sentence for any person convicted of a third, separate Class X offense within 20 years, excluding periods of confinement. Lee's indictment in this case implicated the Habitual Criminal Act, as he was charged with several Class X offenses and had two prior, separate Class X convictions. If convicted of a third Class X offense, Lee would be adjudged a habitual criminal and mandatory life imprisonment would apply.

¶ 5　　Lee's case was set for trial on December 5, 2012. The case was continued for two weeks, however, with the understanding that Lee would enter a guilty plea. A presentence investigation report (PSI) was ordered. The report of proceedings for December 5 is absent from the record before us, but the scheduled trial date and continuance were recounted by the court in later proceedings and are consistent with the common law record.

¶ 6　　Lee then appeared before the circuit court on December 19, 2012.[1] His lawyer informed the court that Lee would be entering a plea of guilty to the first count of the indictment, aggravated vehicular hijacking. The court began a direct colloquy with Lee, as required by Illinois Supreme Court Rule 402 (eff. July 1, 2012). The court informed Lee he was charged with aggravated vehicular hijacking and recited the supporting factual allegations alleged in the indictment. Asked

---

[1]The record before us is incomplete. It contains very few reports of proceedings for the numerous court appearances prior to the December 19, 2012, plea hearing. Also, the record contains references to motions to suppress and hearings on those motions. Neither the motions nor related reports of the proceedings are included in the record on appeal.

whether he was pleading guilty or not guilty, Lee answered, "Guilty, Your Honor." Lee next acknowledged that he signed a jury waiver, that he understood a jury trial meant 12 people would determine whether he was guilty, and that he understood he was giving up his right to a jury trial and admitting his guilt to the charge. He then acknowledged that he was also giving up his rights to a bench trial, to have the State present witnesses against him, to cross-examine witnesses, to present a defense, to testify, to remain silent, and to require the State to prove him guilty.

¶ 7        The court then addressed the applicable sentencing range. It noted that aggravated vehicular hijacking is a Class X felony, which normally carries a 6 to 30-year prison term, or up to 60 years if an extended term applied, followed by 3 years of mandatory supervised release. The colloquy continued:

> "THE COURT: It's my understanding that because of your extensive background, you're mandatory life. Is that correct?
>
> [PROSECUTOR]: That's correct.
>
> THE COURT: Knowing all that, you still want to plead guilty to these charges?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Did anybody threaten you or promise you anything to get you to plead guilty other than what was said in open court today?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: You're pleading guilty of your own free will?
>
> THE DEFENDANT: Yes, sir."

¶ 8        Next, the State presented the factual basis for the plea: Tamika Spizer would testify that Lee approached her with a handgun in a grocery store parking lot in Lansing, Illinois, and took her

2005 Nissan Murano with her daughter inside.[2] In addition, Illinois State Police officers would testify Lee led them on a lengthy car chase through the south side of Chicago and they apprehended Lee after he crashed. The officers would also testify they recovered a handgun from the stolen car. The defense stipulated to those facts.

¶ 9      The court found Lee understood the nature of the charges against him, the possible penalties, his rights under the law, that he made the plea voluntarily, and that a factual basis existed for the plea. The court then accepted the plea and found Lee guilty.

¶ 10      Moving to sentencing, the court stated that it had received and reviewed a PSI and asked the parties if they wished to make any revisions. Both the State and defense indicated they had none.[3]

¶ 11      The court then asked for "matters in aggravation and mitigation." The State filed a petition to adjudge Lee a habitual criminal, citing the Habitual Criminal Act. The prosecutor noted that the statute was formerly "720 ILCS 33B-1," but it was renumbered as "730 ILCS 5-4.5-95." He provided the court with a copy of the statute's text. Defense counsel asked to see the statute, and a copy was provided to him. The court then read the statute aloud.

¶ 12      The State then produced photographs and fingerprints from the Illinois Department of Corrections (IDOC) related to criminal case numbers 93-CR-10662 and 96-CR-22217. According to the prosecutor, these matched information in the PSI.[4] Defense counsel asked to see the text of the statute again, and the court handed it to him. The court then adjudged Lee a habitual criminal and stated, "a mandatory life sentence must be imposed in this case."

---

[2]The record variously states that the child was 4 months old or 4 years old.
[3]The PSI is absent from the record on appeal.
[4]No one stated on the record what the offenses of conviction were in the prior cases.

¶ 13     Lee's attorney maintained "there's a lot of mitigation in this case." He then stated, "I submit it's not mandatory, that the Court still has discretion to not sentence him to life." Defense counsel proffered that Lee both provided information to the Cook County Sheriff's Office and testified before a grand jury about a murder-for-hire scheme. He also reported that Lee had been stabbed and threatened as a consequence of his cooperation with the State.

¶ 14     The court then asked Lee, "do you want to say anything?" Lee read from a letter he had prepared. Among other things, Lee acknowledged the wrongfulness of his actions and that he harmed the victims of his crimes and his own family. He was regretful and wished to better himself. Lee also recounted that, in July 2008, the State made a plea offer that would have resulted in a 22-year sentence at 50%, *i.e.*, with eligibility for day-for-day credit. He had requested a continuance to tell his family he was going to accept the offer, but a new assistant state's attorney—who had taken over the case—rescinded the offer when he returned. Lee concluded:

> "I'm asking you to please have mercy on me and give me one last chance at freedom, Your Honor. I know I don't deserve your mercy or another chance, but I'm asking just for one last chance, and I will prove myself to you and to society."

¶ 15     The court observed that the Habitual Criminal Act provided that a person adjudged a habitual criminal shall be sentenced to a term of natural life imprisonment, and "shall" is understood to be mandatory for purposes of criminal sentencing. The court concluded it "ha[d] no leeway" and sentenced Lee to life imprisonment without the possibility of parole. The State nol-prossed the remaining 19 counts of the indictment. The prosecutor stated he would write a letter to IDOC reporting Lee's cooperation and request he be placed in protective custody.

¶ 16    Lee filed a motion to withdraw his guilty plea on January 16, 2013.[5] The trial court denied the motion, and Lee appealed.[6] Lee's postplea counsel, however, failed to file a certificate in the trial court before the hearing, stating that they had consulted with Lee, ascertained his contentions, examined the court file and report of proceedings, and made any necessary amendments to the motion, as required by Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). The certificate furthers Rule 604(d)'s purpose of "ensur[ing] that any errors that may have resulted in a guilty plea and subsequent sentence are brought to the attention of the circuit court before appeal, while memories are fresh and witnesses are available." *People v. Gorss*, 2022 IL 126464, ¶ 15. A Rule 604(d) certificate is primarily for the benefit of the trial and appellate courts, as it encourages the preservation of a clear record and the reasons why the defendant is moving to withdraw their plea. *People v. Zendejas*, 2017 IL App (2d) 160565, ¶ 3; *Gorss*, 2022 IL 126464, ¶ 15. Since the parties agreed that the required certificate had not been filed, a separate panel of this court remanded the case for new proceedings on the motion to withdraw. *People v. Lee*, No. 1-13-1421 (2014) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 17    On remand, the court again denied the motion, finding Lee "knew exactly what he was getting into." Lee appealed, and the case was remanded a second time because postplea counsel had again failed to file a Rule 604(d) certificate. *People v. Lee*, No. 1-16-1105 (2017) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 18    On remand for a second time, the court denied the motion, finding:

"The Defendant knew exactly what he was facing when he pled guilty, and he, nevertheless, persisted in his plea of guilty. He *** basically said, [']Judge, disregard the law and just

---

[5]A motion to withdraw guilty plea is documented as being filed January 16, 2013, on the Case Summary maintained by the Clerk. No copy of the actual motion appears in the record.

[6]The record does not contain a report of proceedings for the hearing resulting in the denial of the motion.

give me another chance.['] *** The Defendant has not demonstrated to this court that he would have rejected the plea but for the deficiencies and gone to trial. He was keenly aware of the sentence that the court was going to hand down."

Lee appealed, and the sequence repeated a third time, as the subsequent postplea attorney also failed to file a Rule 604(d) certificate. *People v. Lee*, No. 1-19-2066 (2021) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 19    After the third remand, Lee's postplea counsel finally filed a Rule 604(d) certificate and advanced Lee's claim that he should be permitted to withdraw his guilty plea due to his plea counsel's ineffective assistance. The claim relied solely on the transcript from the December 19, 2012 ,plea hearing. No affidavits were submitted to support the motion. Nor did Lee testify. Lee's postplea counsel argued that the transcript established that Lee believed a life sentence was discretionary since (1) his plea counsel stated so to the court and (2) Lee's allocution included requests for "mercy" and "another chance."

¶ 20    The motion was heard by the trial court on July 12, 2021. The court—the same judge who had accepted Lee's guilty plea in 2012—recalled it had advised Lee that, because of his background, it would have to sentence him to natural life on his guilty plea to the offense. The court added:

"I advised him of that in open court, and I gave him time to think about it. And he came back, and he still wanted to plea[d] guilty. I then advised him again that if you persist in your plea of guilty, I will have to sentence you to mandatory life pursuant to statute. There's no wiggle room. Even though his lawyer in open court said, [']No, that's not the case.['] I did advise the lawyer that he was wrong and that, in fact, he would have to serve natural life if he pled guilty. Mr. Lee continued—persisted in his plea of guilty."

The court then denied the motion to withdraw Lee's guilty plea. This appeal followed.

¶ 21                                                 II. ANALYSIS

¶ 22         A guilty plea is a grave act. *People v. Reed*, 2020 IL 124940, ¶ 47. A defendant cannot withdraw a guilty plea at their whim merely because they are dissatisfied with the deal. *Id.* Rather, a defendant must show withdrawal is required to correct a manifest injustice under the facts involved. *Id.*; *People v. Hughes*, 2012 IL 112817, ¶ 32. "Withdrawal is appropriate where the plea was entered through a misapprehension of the facts or of the law or where there is doubt as to the guilt of the accused and justice would be better served through a trial." *Hughes*, 2012 IL 112817, ¶ 32 (citing *People v. Baez*, 241 Ill. 2d 44, 110 (2011)). A trial court's decision to grant or deny a motion to withdraw a guilty plea is reviewed for an abuse of discretion. *People v. Burge*, 2021 IL 125642, ¶ 37. "An abuse of discretion will only be found 'where the court's ruling is arbitrary, fanciful, unreasonable, or no reasonable person would take the view adopted by the trial court.' " *Id.* (quoting *People v. Delvillar*, 235 Ill. 2d 507, 519 (2009)).

¶ 23         Here, Lee argues he misapprehended that a life sentence would be mandatory if he pled guilty to aggravated vehicular hijacking. He believed, as his attorney maintained, that the sentence was discretionary—that the court had the power to sentence him to a term of years he could outlive. Relying on counsel's representation, Lee persisted in his guilty plea and read the letter he had prepared, asking the court for another chance at freedom.

¶ 24         A defendant is entitled to the effective assistance of counsel when entering a guilty plea. *People v. Brown*, 2017 IL 121681, ¶ 25. A claim that counsel gave erroneous advice during the guilty-plea process is governed by the familiar two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Brown*, 2017 IL 121681, ¶¶ 25-26. The defendant must show

counsel's performance was objectively unreasonable and that they were prejudiced as a result. *Id.* ¶ 25.

¶ 25     Although Lee's motion lacks a supporting affidavit or testimony directly asserting that his counsel advised him the sentence was discretionary, the record supports this conclusion. Lee had prepared a written letter in which he implored the court to impose a term less than natural life, revealing (1) Lee entered the plea hearing believing the court had discretion and (2) suggesting his lawyer had advised him so. Furthermore, Lee's attorney effectively advised Lee during the proceedings that the court had sentencing discretion. Counsel stated, "I submit it's not mandatory, that the Court still has discretion to not sentence him to life." Notably, counsel said this after the court read the statute aloud, counsel asked to view—and presumably did review—the statute, and the court stated, "a mandatory life sentence must be imposed in this case."

¶ 26     To be sure, Lee's counsel was wrong. The law was clear that a life sentence was mandatory under the Habitual Criminal Act. Likewise, the facts were clear that the Habitual Criminal Act applied to Lee since he had two prior Class X offenses within 20 years and was now pleading guilty to a third Class X offense. In *Brown*, our supreme court found that when sentencing information was straightforward and readily verifiable, counsel's erroneous advice had no objectively reasonable justification. *Id.* ¶ 27. The same is true here: it was straightforward and readily verifiable that a mandatory life sentence applied if Lee pled guilty. Thus, counsel's failure to inform Lee he faced a mandatory life sentence if he pled guilty was objectively unreasonable. We find, therefore, that Lee's counsel's performance was deficient.

¶ 27     Our analysis, of course, does not end here. *Strickland* requires a defendant to also show their lawyer's deficient performance caused prejudice. Prejudice, for a guilty-plea defendant, means " 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded

guilty and would have insisted on going to trial.' " *Id.* ¶ 26 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). A conclusory allegation to that effect, however, is insufficient. *Id.* If the claim relates to counsel's advice about prospects at trial or strategy, the defendant must raise a claim of innocence or state a plausible defense. *Id.* ¶ 45. But if the claim relates to the consequences of the plea, as here, the defendant must convince the court that a decision to reject the plea bargain would have been rational under the circumstances. *Id.* ¶ 48.

¶ 28        In assessing the rationality of rejecting a plea, we consider the relevant surrounding circumstances. *Id.* ¶ 49. In *Brown*, for example, our supreme court analyzed a claim where a guilty-plea defendant relied on his attorney's erroneous advice that he would be required to serve only 50% of the 18-year term agreed to in a plea bargain. *Id.* ¶ 15. Instead, the defendant was required to serve 85% of the term, a difference of six years. *Id.* However, the court concluded it would not have been rational for Brown to reject the plea bargain. *Id.* ¶ 52. The State agreed to dismiss other charges that would have resulted in a greater sentencing range. *Id.* ¶ 50. There was little doubt Brown would be convicted had he gone to trial. And he would likely have received a greater sentence. *Id.* ¶¶ 49-50. Additionally, nothing demonstrated that Brown's primary focus when pleading guilty was serving 50% of his sentence. *Id.* ¶ 51. Thus, Brown had failed to demonstrate it would have been rational to reject the plea bargain under the circumstances of his case. *Id.* ¶ 52.

¶ 29        The court distinguished Brown's claim from the one asserted in *Jae Lee v. United States*, 582 U.S. 357 (2017) (*Jae Lee*).[7] We find the United States Supreme Court's decision in that case instructive here. In *Jae Lee*, a defendant was charged with a federal drug offense. *Id.* at 360. With no viable defense to the charge, he accepted a guilty plea resulting in a lesser sentence than he

_____

[7]We include the defendant's first name to distinguish him from the defendant in this case.

would have faced had he gone to trial. *Id.* But Jae Lee was a lawful permanent resident of the United States, not a citizen. *Id.* He repeatedly asked his lawyer whether a conviction would put him at risk of deportation. *Id.* at 361. His lawyer erroneously assured him that he would not be deported if he accepted the guilty plea, and Jae Lee relied on that advice. *Id.* During his plea colloquy, the judge warned Jae Lee that a conviction could result in him being deported. *Id.* at 369. Lee answered that the risk of deportation affected his decision to plead guilty and that he did not understand. *Id.* Jae Lee's lawyer then told him the judge was just giving a " 'standard warning,' " so Jae Lee continued with his guilty plea. *Id.* After learning he would be deported, Jae Lee moved to withdraw his guilty plea on the grounds that his lawyer's erroneous advice was ineffective assistance. *Id.* at 362.

¶ 30　　The Supreme Court found Jae Lee demonstrated a reasonable probability he would have not pled guilty had he been properly advised his guilty plea would lead to deportation. *Id.* at 371. The record evinced deportation was the determinative issue in Jae Lee's decision whether to accept the plea deal. *Id.* at 369. Although his prospects at trial were poor, the difference in consequences were certain deportation if he pled guilty versus almost certain deportation if he went to trial. *Id.* at 371. Since Jae Lee placed paramount importance on avoiding deportation, the slight difference between certain and almost certain could make all the difference to his decision. *Id.* Thus, the Court could not conclude it would have been irrational for Jae Lee to reject the plea. *Id.*

¶ 31　　Notably, the Court rejected a *per se* rule, advocated by the government, that a guilty-plea defendant with no viable defense cannot show prejudice. *Id.* at 366-67. Instead, the Court recognized that defendants have more to consider than the likelihood of success at trial. *Id.* at 367. Thus, the prejudice inquiry should be "a 'case-by-case examination' of the 'totality of the evidence,' " focusing on the defendant's decision making. *Id.* at 367.

¶ 32        In this case, the record supports that Lee placed paramount importance on avoiding a natural life sentence. Indeed, we would expect the same for any defendant facing a possible life sentence, except perhaps, those facing the death penalty. More significant, the record also suggests Lee pled guilty instead of going to trial under the belief that doing so would afford an opportunity to persuade the court to impose some lesser term of years. That is, if he pled guilty, then the court could exercise its discretion to not impose a life sentence. In addition to asking for mercy and another chance at freedom, Lee mentioned the State had once offered a plea that would have resulted in a 22-year sentence at 50%. Ostensibly, Lee included this to convey that—at least at one time—the State viewed a lesser than life sentence as a sufficient penalty in this case—a persuasive argument for the court to use its discretion to impose a lesser sentence. As noted, however, the court did not have such discretion and Lee's request was futile.

¶ 33        Like the defendant in *Jae Lee*, Lee faced long odds had he gone to trial. Yet, also analogous to *Jae Lee*, a certain life sentence versus an almost certain life sentence could have made all the difference in his decision to plead guilty. If Lee had been properly advised, he may well have opted to proceed to trial. Following *Jae Lee*, we cannot say the choice to go to trial would have been irrational.

¶ 34        Also important, Lee gained nothing by pleading guilty. Unlike the plea offers in *Brown* and *Jae Lee*, there was no bargain here. There was no offer to accept or reject. Instead, Lee entered a blind plea—apparently on his own initiative—to the first charge listed in the indictment. The State neither reduced the charges nor recommended a sentence in exchange for Lee's guilty plea. The State later nol-prossed the other 19 counts, but neither party represented that this was part of a plea agreement. Moreover, the dismissal of those counts was immaterial since the conviction for aggravated vehicular hijacking alone resulted in a life sentence. The prosecutor's letter to IDOC

was not part of a plea agreement either, as it appears to have been gratuitous. In addition to surrendering his trial rights, Lee's guilty plea waived any review of his motions to suppress or other possible claims of error. He further relinquished any ability to enforce the State's prior plea offer or to negotiate a plea bargain that would result in less than a life sentence.

¶ 35    Since Lee received no benefit from pleading guilty and did so under an erroneous belief that it gave him a chance to avoid a life sentence, we find a reasonable probability that, but for his counsel's error, Lee would not have pled guilty and would have insisted on going to trial. Thus, Lee has shown prejudice.

¶ 36    The State contends, however, that the court's admonishments cured any prejudice resulting from counsel's ineffective assistance. To be sure, we recognize that a trial court's proper admonishments can cure prejudice resulting from counsel's incorrect advice. *People v. Valdez*, 2016 IL 119860, ¶ 31. But the admonishments here were deficient. Most significant, the trial court never directly informed Lee that a mandatory life sentence applied if he pled guilty or inquired whether Lee understood that would be the consequence of his plea.

¶ 37    Before accepting a guilty plea, the trial court must substantially comply with Rule 402(a)(2), which requires the court to address the defendant personally and inform them and determine that they understand "the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences." Ill. S. Ct. R. 402(a)(2) (eff. July 1, 2012); *People v. Boykins*, 2017 IL 121365, ¶ 12. That simply did not happen here. Instead of directly addressing Lee and clearly telling him that a life sentence would be mandatory if he pled guilty, the court asked Lee if he still wished to plead guilty "knowing all that." This imprecise question was unbefitting for the gravity of the proceeding. By pleading guilty, Lee agreed to spend the remainder of his life in

prison. Yet the trial court failed to clearly warn Lee of this and make certain he understood. With any guilty plea, it is incumbent upon the court to clearly and precisely inform the defendant of the possible sentence that will follow. When the guilty plea will result in a certain life sentence, it is even more imperative that the court ensures that the defendant understands. Here, the trial court failed to do so.

¶ 38     Due process requires that the record must affirmatively show that the plea was entered intelligently and with full knowledge of its consequences. *People v. Whitfield*, 217 Ill. 2d 177, 184 (2005) (describing the holding of *Boykin v. Alabama*, 395 U.S. 238 (1969)). The record here falls short of an affirmative showing that Lee understood the consequence of his guilty plea would be a mandatory life sentence. He was never told so, he never acknowledged such an understanding, and his plea for another chance at freedom evinced he believed the opposite.

¶ 39     Additionally, when the trial court put the "knowing all that" question to Lee, it was unclear what "all that" included. Moments before, the court went over numerous trial rights. It also gave a complicated explanation about the sentence, stating that it was normally 6 to 30 years, but could be up to 60. And, instead of addressing Lee personally to inform him he would be sentenced to life if he pled guilty, the court asked the prosecutor if Lee was mandatory life due to his "extensive background."[8] With this context and the court's imprecise question, we cannot construe Lee's affirmative response as his expressed understanding that a mandatory life sentence applied.

¶ 40     Nevertheless, the State argues the trial court did substantially comply with Rule 402(a)(2) since it read the Habitual Criminal Act aloud, stated a mandatory life sentence must be imposed, and explained it had "no leeway." Additionally, the State submits Lee must have understood

---

[8]At oral argument, the State conceded that, as appears from the transcript, the trial court put this question to the prosecutor.

because he was later given a chance to speak and did not say he thought the sentence was discretionary. We are unpersuaded.

¶ 41      Again, *Jae Lee* is instructive. Although the government did not argue the judge's warning cured any prejudice from counsel's misadvice in that case, the Supreme Court addressed the issue in a footnote. *Jae Lee*, 582 U.S. at 369 n.4. The Court explained that Jae Lee's claim extended to the advice counsel gave during the plea hearing, which specifically undermined the judge's admonition. *Id.* The Court also noted that Jae Lee stated on the record he did not understand. *Id.*

¶ 42      The facts here are similar. Lee's attorney made a contemporaneous statement during the hearing that the court had discretion, undermining the court's previous statements to the contrary. The court also failed to correct Lee's attorney. Nor did the court elicit whether Lee understood a life sentence was mandatory. Consequently, we cannot, as the State urges, construe Lee's failure to raise the issue when he was given an opportunity to speak as proof of his understanding that a life sentence was mandatory. Further, the court's question ("[D]o you want to say anything?") was unspecific: not a clear prompt for Lee to express his misunderstanding. Although Lee did not state that his understanding differed from the court's statements, proceeding to read his prepared letter showed he believed the court had sentencing discretion. As with Lee's attorney, the court also failed to correct Lee after hearing him read his letter. Instead, the court simply declared that it had no leeway and imposed a life sentence.

¶ 43      In denying Lee's motion to withdraw his guilty plea, the trial court stated that Lee "knew exactly what he was facing" and was "keenly aware" that a mandatory life sentence applied. After the third remand, the trial court stated that it gave Lee "time to think about it," that it repeatedly advised Lee a mandatory life sentence would apply, and that it corrected Lee's counsel on the point. We give deference to a trial court's factual findings unless against the manifest weight of

the evidence. *People v. Wyma*, 2020 IL App (1st) 170786, ¶ 59. "Factual findings are against the manifest weight of the evidence when the opposite conclusion is apparent or when the findings are found to be unreasonable, arbitrary, or not based on the evidence." *Id.*

¶ 44    Here, the record simply does not reflect the trial court's recollections of Lee's plea hearing. The transcript reveals no "time to think about it." It is possible that the court was referring to both the December 19, 2012, plea hearing and another hearing that preceded it. With no transcripts of prior hearings, however, we cannot corroborate what occurred. Generally, doubts arising from an incomplete record are resolved against the appellant. *In re Marriage of Rogers*, 213 Ill. 2d 129, 140 n.2 (2004). But our doubt is not so great to invoke that principle here. The trial court's statements are imprecise, making it speculative that the court was referring to more than one hearing. Similarly, the record fails to show that the trial court corrected Lee's attorney or that Lee persisted with his plea after being advised that a life sentence was mandatory.

¶ 45    Accordingly, we find the trial court's finding that Lee understood a mandatory life sentence applied if he pled guilty is against the manifest weight of the evidence. Further, the trial court abused its discretion by denying Lee's motion to withdraw his guilty plea.

¶ 46    Our ultimate inquiry is whether Lee should be permitted to withdraw his guilty plea to correct a manifest injustice. As our analysis shows, he does not seek to withdraw his plea on a whim or mere *post hoc* assertion about how he would have pled but for his lawyer's deficiency. Rather, serious errors occurred in the proceedings that resulted in Lee being sentenced to prison for the remainder of his life. His lawyer failed to provide the effective assistance the constitution requires. And the court failed to ensure Lee understood the consequences of his guilty plea, as due process requires. Thus, we find it is a manifest injustice to hold Lee to his guilty plea under the unique circumstances of this case.

¶ 47                                        III. CONCLUSION

¶ 48          Accordingly, we reverse the trial court's denial of Lee's motion to withdraw his guilty plea,

vacate the conviction and sentence, and remand for Lee to plead anew.

¶ 49          Reversed in part and vacated in part; cause remanded.

***People v. Lee*, 2023 IL App (1st) 211080**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 06-CR-5493; the Hon. Luciano Panici, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, State Appellate Defender, of Chicago (Douglas R. Hoff, Deputy Defender, and S. Amanda Ingram, Assistant State Appellate Defender), for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Paul E. Wojcicki, and James J. Stumpf, Assistant State's Attorneys, of counsel), for the People. |