2026 IL App (1st) 241197-U

No. 1-24-1197

Filed February 18, 2026

Third Division

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 11 CR 19367 |
| | ) | |
| DAVID TAYLOR, | ) | Honorable |
| | ) | Alfredo Maldonado |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE MARTIN delivered the judgment of the court.
Justices Lampkin and Rochford concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The trial court did not abuse its discretion in denying a continuance for a hearing on defendant's motion to withdraw his guilty plea. Postplea counsel complied with Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024).

¶ 2     David Taylor appeals the circuit court's denial of his motion to withdraw his guilty plea.

For the reasons that follow, we affirm.[1]

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 3                                    I. BACKGROUND

¶ 4          According to the stipulated factual basis of Taylor's guilty plea, Taylor approached workers at a construction site in Chicago on the afternoon of September 30, 2011. Taylor produced a handgun and demanded money from Jose Pilado and Oben Pilado. After the men told him they had no money, Taylor shot Oben in the abdomen and took cash from his pockets. Jose struck Taylor in the back with a level. Taylor shot Jose in the forehead. The bullet lodged in Jose's neck and shoulder area. Both Oben and Jose survived but suffered great bodily harm from their gunshot wounds. Both men later identified Taylor as their assailant. Workers Esteban Ibarra and Armando Ibarra also identified Taylor.

¶ 5          Taylor was indicted on four counts of attempted first degree murder, two counts of armed robbery, two counts of aggravated battery with a firearm, and two counts of attempted armed robbery. In Taylor's answer to discovery, he indicated that he may rely on an alibi defense at trial. The record reveals that the alibi witness observed Taylor one block away from the scene of the shootings, four hours later.

¶ 6          The matter was set for a jury trial to commence on May 5, 2014, and a jury was selected that day. At some point that day, the State made a guilty plea offer that would result in a 31-year prison term. After the court admonished him of the possible penalties in accordance with *People v. Curry*, 178 Ill. 2d 509 (1997), Taylor declined the offer.

¶ 7          The following day, Taylor refused to leave the "bridge" area connecting the jail and courthouse. His attorneys left the courtroom to speak with him on the bridge. After their meeting, Taylor came to the courtroom, and the court was informed that he wished to accept the plea offer extended by the State the previous day. After being duly admonished of his trial rights and the possible penalties he faced if convicted after trial, Taylor pled guilty to two counts of attempted

first degree murder with a prison term of 31 years on each, to be served concurrently. The court found that Taylor entered his guilty plea freely and voluntarily. In accordance with the plea agreement, the State nol-prossed the remaining eight counts.

¶ 8    Taylor filed a timely *pro se* motion to withdraw his guilty plea. The motion included an affidavit from Taylor, which read: "I was lied [and] manipulated into taking a plea of guilty by my attorneys. I was told if I went to [trial] I would spend the rest of my life in prison [and] I would not get an appeal."

¶ 9    At a hearing on his motion, Taylor addressed the court personally. He stated that he wanted to go to trial, but after the jury was selected, Assistant Public Defender (ADP) Kyan Keenan told him he would spend the rest of his life in prison. After being transported to prison, Taylor went to the library and learned that he "would not have spent [his] life in prison because [he had]n't go[ne] to trial yet." In addition, he learned that he would have been able to appeal even if he were convicted after a trial. Taylor alleged that his lawyers tricked him and he accepted the plea offer out of fear he would spend the rest of his life in prison.

¶ 10   APD Wendy Steiner, Taylor's lead counsel, related that the State did not make a plea offer until the day the jury was selected. The following day, Taylor refused to come to the courtroom. APDs Steiner and Keenan went to speak with him. Taylor informed them that he wanted to accept the State's 31-year plea offer. After their discussion, Taylor came to the courtroom and entered his guilty plea.

¶ 11   The court stated that it recalled Taylor answering 'no' to the question of whether any promises or threats were made to get him to plead guilty, but it wished to review the transcript from the plea hearing. Taylor responded that he did not understand the court's questions because he was in shock and did not know if his counsel's statement that he would spend the rest of his life

in prison was a threat or promise. The court continued the matter so the transcript could be obtained.

¶ 12　　When the matter was reconvened a few weeks later, the court provided Taylor a copy of the transcript and gave him time to review it. Taylor reiterated that APD Keenan told him that he would spend the rest of his life in prison if he went to trial. He added that she also told him he would not be able to appeal. He pled guilty because he believed the 31-year term was the only option he had to avoid life in prison. After he arrived at prison, Taylor "looked up cases and stuff" and discovered that he had other options. He realized he could have gone to trial and had the right to appeal a conviction. Had he been informed of this, Taylor asserted, he would not have pled guilty. Taylor added that he looked up the definition of "threat," which he found to be a "communicated intent of inflicting harm." He likewise thought of a threat as meaning "something like bodily harm." Thus, he did not consider his counsel telling him he would spend the rest of his life in prison if he went to trial as a threat. Instead, he considered APD Keenan's statement as legal advice. This understanding, Taylor explained, is why he answered 'no' when the court asked him if he had been threatened. Now, however, he understood APD Keenan's statement as a threat. The court continued the matter for APD Keenan to appear.

¶ 13　　On the next court date, Taylor repeated his allegations and reiterated that APD Keenan told him he would not be able to file an appeal. APD Keenan related that she had no discussion with Taylor on May 5 regarding a plea offer, since she was at counsel table during jury selection and an offer had not yet been made at that point. APD Steiner related that there was only one reference to appeal in their discussion with Taylor. Taylor had stated, "If I get found guilty, I'll just, you know, there will be issues for appeal in the trial." APD Steiner responded, "That's not a trial strategy." APD Steiner asserted that Taylor was never told he could not appeal.

¶ 14        The court noted that the May 6 transcript established that Taylor answered "no" to whether any threats or promises had been made to get him to plead guilty. It also showed that the court informed Taylor that he faced up to 110 years in prison if convicted after trial. The transcript further confirmed that the court informed Taylor he had the right to appeal and Taylor indicated that he understood. The court then denied Taylor's motion to withdraw his guilty plea. Taylor appealed.

¶ 15        By agreed order, the matter was remanded for new proceedings, since the court failed to appoint new counsel for Taylor in accordance with Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024). *People v. Taylor*, No. 1-14-2741 (agreed order entered Mar. 24, 2016).

¶ 16        On remand, postplea counsel, APD Steve Black, was appointed to represent Taylor. APD Black filed a certificate in accordance with Rule 604(d), stating that Taylor's *pro se* motion to withdraw his guilty plea adequately presented his claims.

¶ 17        A new judge presided over the hearing on Taylor's motion. Taylor testified consistently with his statements from the original hearing. He added that when APD Steiner informed him of the plea offer, she told him that he would probably be found guilty at trial. He responded that he would appeal if he were found guilty. APD Steiner replied that he could not appeal. During his testimony, Taylor stated that the highest level of education he completed was the ninth grade.

¶ 18        APD Steiner testified consistently with her statements from the original hearing. She reiterated that she never told Taylor he would spend the rest of his life in prison or that he could not appeal. She again recounted that when Taylor mentioned an appeal, she told him, "Trying a case to appeal a case is not a trial strategy."

¶ 19        APD Keenan testified consistently with her prior statements and APD Steiner's account of their discussion with Taylor. She confirmed that APD Steiner told Taylor that an appeal after a conviction was not a trial strategy.

¶ 20        The court denied Taylor's motion to withdraw his guilty plea and noted that it did not find his claims credible. Taylor appealed. This court remanded the matter a second time upon finding that APD Black's certificate did not strictly comply with Rule 604(d). *People v. Taylor*, 2023 IL App (1st) 171631-U.

¶ 21        On the second remand, new postplea counsel filed an amended motion to withdraw Taylor's guilty plea. The amended motion asserted that Taylor's guilty plea was involuntary. Citing ADP Steiner's and ADP Keenan's testimonies from the prior hearing, Taylor claimed he was not properly informed that he would have the right to appeal if he were convicted after a trial. The motion noted that Taylor previously testified that he completed no more than the ninth grade. Postplea counsel also filed a Rule 604(d) certificate attesting, *inter alia*, that she had made amendments to the motion as necessary for adequate presentation of Taylor's claims.

¶ 22        The parties appeared for a hearing on January 29, 2024. At the outset, postplea counsel indicated she was not ready to proceed since Taylor had just informed her the day of the scheduled hearing about documents related to his educational history. Specifically, Taylor indicated he had an Individualized Education Program (IEP) while in school and a GED literacy evaluation conducted while in the Illinois Department of Corrections (IDOC). Counsel requested a continuance to obtain these documents. She contended they would give credence to Taylor's limited education.

¶ 23        The court denied the request for a continuance. The court noted that postplea counsel had filed a Rule 604(d) certificate the preceding September, attesting that she had consulted with Taylor, examined the record, and made all necessary amendments to his motion.

¶ 24        Taylor testified that he always wanted to go to trial. After he was offered the plea agreement, his attorneys told him he would spend the rest of his life in prison if he went to trial.

He did not understand the difference between consecutive and concurrent sentences. Taylor testified that the ninth grade was his highest level of education. While in high school, he had an IEP due to a learning disorder that affected his ability for reading, writing, and comprehension. While incarcerated in IDOC, Taylor sought to obtain a GED but was placed on a waiting list, where he has remained for seven years. He explained that inmates with shorter prison terms get priority. Taylor's evaluation indicated he was at an eighth grade level, and he would need to complete adult basic education before starting the GED program. Taylor claimed that when the court asked him whether he understood at the plea hearing, he did not understand but said "yes" because he was embarrassed and "felt dumb."

¶ 25　　　　The court—the same judge who presided over Taylor's second hearing—took notice of the prior hearing. The court again found that it did not find credible Taylor's claims that his lawyers told him he would not have a right to appeal a conviction or he would spend the rest of his life in prison. Instead, the court found ADP Steiner's and ADP Keenan's accounts credible. In addition, the court observed that Taylor used the word "manipulated" in his written *pro se* motion to withdraw his plea, which is a sophisticated word. The court also noted that Taylor dropped out of school in ninth grade, but he was not prevented from obtaining a GED: he was on a wait list and needed to complete a basic skills test. The transcript from the plea hearing confirmed that Taylor was informed that his guilty plea would result in a 31-year sentence, and he was informed that if found guilty as to both victims, he faced consecutive sentencing ranging from 62 to 110 years in prison. Ultimately, the court found that Taylor had not shown that his guilty plea was unknowing or involuntary and denied the motion to withdraw the plea. We allowed Taylor's petition for leave to file a late notice of appeal.

¶ 26                                    II. ANALYSIS

¶ 27        Taylor first argues that the trial court abused its discretion by denying his request for a continuance to obtain documents regarding his education and asks this court to remand the matter for a new hearing. "[T]he granting or denial of a continuance is a matter resting in the sound discretion of the trial court, and a reviewing court will not interfere with that decision absent a clear abuse of discretion." *People v. Walker*, 232 Ill. 2d 113, 125 (2009). An abuse of discretion will only be found "where the court's ruling is arbitrary, fanciful, unreasonable, or no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *People v. Burge*, 2021 IL 125642, ¶ 37. Whether a court abused its discretion by denying a request for continuance depends on the facts and circumstances of each case. *Walker*, 232 Ill. 2d at 125. When a continuance was requested to obtain additional evidence, factors to be considered include: "(1) the diligence of defendant, (2) whether defendant has shown that the [evidence] was material and may have affected the verdict, and (3) whether the exclusion of the [evidence] prejudiced defendant." *People v. Miles*, 2020 IL App (1st) 171258, ¶ 40.

¶ 28        Here, the record establishes that Taylor was not diligent. After the second remand, postplea counsel filed a Rule 604(d) certificate in September 2023 attesting that she had consulted with Taylor and made necessary amendments to his motion. At status conferences in November and December 2023, the court and both parties expressed their expectation that a hearing on the motion would go forward in January 2024. As counsel informed the court, Taylor only mentioned his IEP and GED evaluation to his postplea counsel just before the hearing. As those matters were known to Taylor for years, his failure to apprise his counsel until that time shows a lack of diligence.

¶ 29        More significant, Taylor cannot establish that he was prejudiced by the court's denial of his request for a continuance. Although he lacked corroborating documents, Taylor testified that he

had an IEP in school and tested at an eighth grade level in his evaluation for the GED program. His testimony on these points was undisputed and the court's remarks indicate that it accepted this testimony as true. Corroborating documents would have been cumulative. Moreover, the court denied Taylor's motion to withdraw his guilty plea because it did not find him credible and the record demonstrated that Taylor was properly informed of the consequences of his guilty plea and the potential penalties he faced if convicted at trial. Thus, there is no reasonable probability that documents corroborating Taylor's testimony about his education would have changed the outcome.

¶ 30　　　　Further, Taylor's limited educational attainment does not necessarily prove his guilty plea was unknowing or involuntary. As the trial court noted, Taylor's written *pro se* motion demonstrated his verbal ability. We also observe that Taylor exhibited an effective ability to understand and communicate on the record, especially at the initial hearing on his motion, in which he had a lengthy direct discussion with the court. His own account of reviewing legal materials to support his motion and looking up the word "threat" demonstrated organized thought, comprehension, and verbal fluency. Thus, the determination that Taylor's plea was knowing and voluntary is not against the manifest weight of the evidence. See *People v. Lee*, 2023 IL App (1st) 211080, ¶ 43 (observing that we defer to a trial court's finding that a defendant entered a guilty plea knowingly unless against the manifest weight of the evidence). Documents regarding his education would not alter our assessment.

¶ 31　　　　In addition, Taylor's claim is that he entered his guilty plea under a misapprehension of law because he relied on his counsel's deficient advice, primarily that they lead him to believe he could not appeal if he were to be convicted after a trial. But, for such a claim, the bare allegation that the defendant would have rejected the plea if his counsel had provided accurate advice is insufficient. *People v. Brown*, 2017 IL 121681, ¶ 47. Instead, the defendant "must convince the

court that a decision to reject the plea bargain would have been rational under the circumstances." (Internal quotation marks omitted.) *Id*. ¶ 48.

¶ 32    Here, it would not have been rational for Taylor to reject the 31-year plea offer. Multiple eyewitnesses identified him as the person who shot Jose Pilado and Oben Pilado and his claimed alibi was weak where it failed to establish his location at the time of the shootings. Therefore, Taylor's prospects at trial were not good and, as he was the sole defendant, he would have been found to have personally discharged a firearm proximately causing severe bodily harm to both victims. Consequently, 25-year enhancements would have been added (see 730 ILCS 5/8-4(c)(1)(D) (West 2010)), and consecutive sentencing would have been mandatory (see 730 ILCS 5/5-8-4(d)(1) (West 2010)). Accordingly, Taylor faced a minimum prison term of 62 years if convicted. By accepting the plea offer, Taylor avoided a *de facto* life sentence. See *People v. Reyes*, 2016 IL 119271, ¶ 5 (an unsurvivable term of years is considered a *de facto* life sentence). The IDOC website indicates he will be age 50 upon release. See *People v. Johnson*, 2021 IL 125738, ¶ 54 (courts may take judicial notice of information from the IDOC website). Thus, rejecting the plea offer would not have been rational.

¶ 33    Separately, Taylor argues postplea counsel failed to comply with Rule 604(d), entitling him to a new hearing. Specifically, he contends counsel's representation that Taylor's educational documents were necessary rebuts counsel's facially valid certificate attesting that she made necessary amendments to the motion for adequate presentation of his claim. We disagree. As we previously explained, the documents were unnecessary, since they were cumulative of Taylor's undisputed testimony, which the court accepted, and were unavailable due to Taylor's own lack of diligence. For these reasons, counsel's certificate is unrefuted.

¶ 34                                    III. CONCLUSION

¶ 35          Based on the foregoing, the judgment of the circuit court is affirmed.

¶ 36          Affirmed.