2025 IL App (1st) 232266-U

THIRD DIVISION
August 27, 2025

No. 1-23-2266

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 06 CR 03027 |
| | ) | |
| JERMAINE COOPER, | ) | |
| | ) | Honorable Mark W. Martin, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE D.B. WALKER delivered the judgment of the court.
Presiding Justice Lampkin and Justice Martin concurred in the judgment.

**ORDER**

¶ 1    *Held:* Postconviction counsel did not render unreasonable assistance when she failed to (1) recharacterize defendant's *pro se* postconviction petition as a petition for relief for judgment pursuant to section 2-1401 of the Code of Civil Procedure and (2) amend his petition to include additional facts supporting his claim of actual innocence. Affirmed.

¶ 2    Defendant Jermaine Cooper appeals from the trial court's dismissal of his petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)) at the second stage. Defendant contends that postconviction counsel rendered unreasonable assistance when she failed to (1) recharacterize his *pro se* petition as a petition for relief for judgment pursuant to

section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2020)) and (2) amend his petition to include additional facts supporting his claim of actual innocence. For the following reasons, we affirm the judgment of the trial court.

¶ 3                                    BACKGROUND

¶ 4      The facts underlying defendant's case were contained in a prior order of this court. See *People v. Cooper*, 348 Ill. App. 3d 1085 (2008) (table). Accordingly, we include below only those facts necessary for resolving defendant's current claims.

¶ 5                                    Prior Proceedings

¶ 6      On January 31, 2006, defendant was charged by indictment under case number 06 CR 3027 with, *inter alia*, delivery of a controlled substance within 1,000 feet of a school and possession of a controlled substance with intent to deliver. In addition, the State charged defendant by indictment under case numbers 06 CR 3025 and 06 CR 3026 with delivery of a controlled substance. The State elected to proceed to trial under case number 06 CR 3027.

¶ 7      The evidence adduced at trial showed that, at around 6 p.m. on December 28, 2005, Chicago police officer Ryan Kane, as part of an organized narcotics surveillance in Schaumburg, Illinois, telephoned defendant and arranged to purchase $140 worth of crack cocaine. Defendant met and got into Kane's car. Defendant directed Kane to drive to a nearby liquor store around the corner, which was located next to a children's daycare facility. There, defendant tendered 14 packages of a "white rock-like substance" in exchange for the $140. Other officers arrived to arrest defendant, who then began to run. The officers eventually caught and arrested defendant. Subsequent forensic testing revealed the white rock-like substance contained 2.2 grams of cocaine.

¶ 8      In his case-in-chief, defendant called Chicago police officer Terry O'Brien to testify. He stated that he was one of the officers involved in arresting defendant. O'Brien said that he and his partner, Chicago police investigator Mir, interviewed defendant at the police station. During this interview,

O'Brien told defendant that he would not be charged with delivery of a controlled substance within 1,000 feet of a school if he provided "valuable information." O'Brien admitted that defendant did not make any incriminating statements about the offense prior to O'Brien extending that offer. On cross-examination, O'Brien explained that defendant offered to work with the police in exchange for a reduced charge in the instant offense. O'Brien further agreed that he made this offer after defendant admitted being "involved in other offenses exactly like this on two previous occasions."

¶ 9 Although the jury found defendant guilty of delivery of a controlled substance within 1,000 feet of a school and possession of a controlled substance with intent to deliver, the trial court subsequently granted his posttrial motion in part, agreeing that the day care center that was within 1,000 feet of this offense did not meet the statutory definition of "school." The court thus reduced defendant's Class X conviction of delivery of a controlled substance within 1,000 feet of a school to a Class 1 conviction of delivery of a controlled substance. The matter then proceeded to a sentencing hearing, at the conclusion of which the court sentenced defendant to 12 years' imprisonment. Defendant then pleaded guilty (under case number 06 CR 3025) to a separately filed charge of delivery of a controlled substance based upon evidence that he sold 10 bags of cocaine to an undercover investigator on December 21, 2005.[1] In accordance with this plea, the court sentenced defendant to an agreed-upon concurrent term of 12 years' imprisonment.

¶ 10 On direct appeal, defendant did not challenge the sufficiency of the evidence; rather, he contended that (1) trial counsel rendered ineffective assistance (based upon counsel's questioning of O'Brien), (2) the State's closing arguments denied him a fair trial, and (3) he was entitled to $780 of presentence custody credit. We agreed with his presentence custody credit claim but rejected his remaining claims of error. See *Cooper*, 348 Ill. App. 3d 1085 (table).

---

[1] As part of this plea agreement, the State nol-prossed the charges under case number 06 CR 3026.

3

¶ 11                              Defendant's Postconviction Petition

¶ 12    On February 17, 2021, defendant filed his *pro se* petition for postconviction relief under the Act.  Defendant sought to vacate his conviction under case numbers 06 CR 3027 and 06 CR 3025 based upon newly discovered evidence of police misconduct involving Officers John Cichy, Matthew Hubak, and O'Brien.  Specifically, defendant argued that these officers were involved in a "drug ring" from 2012 to 2013, and therefore, evidence of O'Brien's misconduct would have likely changed the outcome of his jury trial under 06 CR 3027.  Defendant attached to his petition the transcript of O'Brien's testimony and an article from the Chicago Tribune (dated February 12, 2018) reporting, *inter alia*, the officers' arrest for their alleged participation in a drug ring for a six-month period between 2012 and 2013, as well as O'Brien's plea of guilty and subsequent sentence of 24 years' imprisonment.  Defendant's petition also included a copy of O'Brien's police report concerning a prior undercover drug transaction involving defendant that took place on December 21, 2005.  Defendant argued that, had this information been presented to the jury, he would not have been found guilty (in case number 06 CR 3027), nor would he have subsequently pleaded guilty (in case number 06 CR 3025).  Defendant further argued that he was not "culpably negligent" in raising this claim because the evidence underlying the claim was newly discovered.

¶ 13    On January 21, 2022, the trial court noted that defendant's *pro se* petition had not been ruled upon within 90 days, so the court advanced the petition to the second stage.  On May 13, 2022, however, the court noted that, solely with respect to case number 06 CR 3025, defendant had filed a *pro se* postconviction petition in 2008 but had withdrawn the petition after the court had "docketed that petition."  The court thus construed case 06 CR 3025 as a request for leave to file a successive postconviction petition, which it denied.  The court then reiterated that, regarding case number 06 CR 3027, it had previously advanced the matter to the second stage of proceedings as a matter of law because it had not been ruled on within 90 days of filing.  Finally, the court

appointed counsel to represent defendant. Appointed counsel then requested the record from the circuit clerk.

¶ 14    On June 7, 2022, defendant filed a *pro se* motion to reconsider the dismissal of his postconviction petition (under both case numbers 06 CR 3025 and 06 CR 3027). Defendant argued that the court erred in treating his petition as successive because he withdrew his prior petition and his delay in filing the present petition was not due to his culpable negligence.

¶ 15    On July 21, 2022, defendant filed a *pro se* supplemental postconviction petition. Defendant's supplemental petition alleged, *inter alia*, that Hubak and O'Brien arrested him in December 2005, falsely accused him of selling drugs, and told him that they wanted him to work for them. Defendant added that the officers told him that, if defendant refused, the officers would take him into custody, and defendant would end up in jail "for a longtime." Although defendant refused, the officers started "blowing up" his cell phone and looking for him. Defendant further alleged that, on December 28, 2005, O'Brien and Hubak tackled him and O'Brien began beating defendant about the face. The officers then took defendant to St. Alexius Hospital for treatment of his injuries. Defendant said that, after he left the hospital, the officers brought him to the Schaumburg police department, keeping him in police custody and "making [him] work for them." Defendant said he was in fear for his life, so he began helping the officers to sell drugs. Defendant added that he was "frame[d] and abuse[d]" by the officers, and that they had stolen money from him. Finally, defendant said he was not culpably negligent in failing to file this petition in a timely manner because he was denied access to the prison's law library "in 2014."

¶ 16    On August 26, 2022, the trial court held a hearing on defendant's motion to reconsider and his *pro se* supplemental postconviction petition. The court denied his motion to reconsider with respect to case number 06 CR 3025, construing that the petition on that case as a successive

postconviction petition and defendant had failed to meet the cause-and-prejudice test for lack of standing. The court further found that, as to case number 06 CR 3027, the petition on that case had advanced to the second stage as a matter of law, so defendant's motion to reconsider the "dismissal" would be denied as moot. Regarding defendant's supplemental petition, the court stated that defendant must obtain leave of court prior to filing the supplemental petition, and that the court was denying leave, again because "defendant lacks standing in both of these cases to pursue postconviction relief." The court then continued the matter to October 14, 2022, so that appointed counsel would have time to review the record and "case law" regarding standing.

¶ 17 The trial court subsequently continued the matter at appointed counsel's request for additional time to obtain certain records, review them, and conduct her "due diligence." These continuances took place in October 2022, November 2022, and January 2023.

¶ 18 On May 9, 2023, postconviction counsel filed her certificate pursuant to Illinois Supreme Court Rule 651(c) (Ill. S. Ct. R. 651(c) (eff. July 1, 2017)). Counsel stated in her certificate that she consulted with defendant to ascertain his contentions of deprivation of constitutional rights and that she discussed relevant case law regarding his *pro se* postconviction petition. She further stated that she reviewed defendant's postconviction petition as well as the appellate record from case number 1-06-3022 (defendant's direct appeal), and that she attempted to obtain the trial attorney's trial file. Finally, counsel stated that she did not file an amended petition because defendant's *pro se* postconviction petition adequately set forth his claims.

¶ 19 The State moved to dismiss defendant's *pro se* postconviction petition on August 7, 2023. The State argued that defendant lacked standing because, when he filed his petition, defendant was no longer imprisoned for the crime underlying his petition. In addition, the State argued in the

6

alternative that defendant's claim lacked merit because he failed to make any claim or present any evidence that there was police misconduct in his specific 2006 cases.

¶ 20    On October 27, 2023, the trial court held a hearing on the State's motion to dismiss. The State made substantially the same arguments as those in its motion to dismiss. Defendant's appointed counsel initially argued that "all well-pled facts are given to be true," and that counsel did examine whether defendant's "second issue" was directly applicable. In response to the court, counsel explained that defendant had been arrested in December 2005 and sentenced to 12 years' imprisonment "that was at 50 percent and 3 years of MSR [mandatory supervised release]. So he was released." Counsel added that defendant's "parole time" would have ended in December 2014, and defendant then "picked up a 2014 case." The following colloquy then took place:

"THE COURT:   So [defendant] picked up the 2014 case

when he was already released?

MS. NESBIT [appointed counsel]:  While he was on MSR.

THE COURT:  From the 06 case?

MS. NESBIT:  Yes.  That's all I have to say."

The trial court then granted the State's motion to dismiss on the basis that defendant lacked standing. This timely appeal follows.

¶ 21                                    ANALYSIS

¶ 22    Defendant contends that his postconviction counsel rendered unreasonable assistance on two grounds. First, he argues that she failed to properly recharacterize his *pro se* postconviction petition to avoid dismissal for lack of standing. Second, he argues that postconviction counsel provided unreasonable assistance by failing to amend his pleading to include all of his claims, namely, his actual innocence claim.

7

¶ 23   The Act allows a defendant to challenge a conviction or sentence for violations of federal or state constitutional rights. *People v. Pendleton*, 223 Ill. 2d 458, 471 (2006). An action for postconviction relief is a collateral proceeding rather than an appeal from the underlying judgment. *People v. Williams*, 186 Ill. 2d 55, 62 (1999).

¶ 24   In addition, proceedings pursuant to the Act implicate statutory standing principles. *People v. Johnson*, 2021 IL 125738, ¶ 32. Section 122-1(a) of the Act provides in relevant part that any person "imprisoned in the penitentiary" may institute a proceeding under the Act alleging a substantial denial of rights under either the state or federal constitutions. 725 ILCS 5/122-1(a) (West 2020). If, however, a petitioner has fully discharged his sentence for the challenged conviction at the time he files his postconviction petition, he is no longer "imprisoned in the penitentiary" and thus lacks standing to seek relief under the Act. *Johnson*, 2021 IL 125738, ¶ 37 (citing *People v. Carrera*, 239 Ill. 2d 241, 253 (2010)).

¶ 25   Postconviction proceedings contain three stages. *People v. Tate*, 2012 IL 112214, ¶ 9. At the first stage, the trial court must review the petition within 90 days of its filing and determine whether the petition states the gist of a constitutional violation or is either frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2020); *People v. Bailey*, 2017 IL 121450, ¶ 18. If the petition has no arguable basis either in law or in fact, the court may summarily dismiss it as frivolous or patently without merit. *Tate*, 2012 IL 112214, ¶ 9. If it is not summarily dismissed, the petition advances to the second stage, where counsel may be appointed to an indigent defendant, and where the State may respond to the petition. *Id.* ¶ 10. At this stage, the court determines whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. *Id.* If no such showing is made, the petition is dismissed. Otherwise, the petition is advanced to the third stage for an evidentiary hearing. *Id.*

¶ 26    In this case, the petition was dismissed at the second stage of proceedings. During the second stage of proceedings, a defendant bears the burden of making a substantial showing of a constitutional violation. *People v. Domagala*, 2013 IL 113688, ¶ 35. This stage, however, only tests the legal sufficiency of the petition. Unless the allegations in the petition are positively rebutted by the record, they are taken as true, and the question to be resolved at the second stage is whether those allegations establish a constitutional violation. *Id.* "In other words, the 'substantial showing' of a constitutional violation that must be made at the second stage [citation] is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, *which if proven* at an evidentiary hearing," would entitle the defendant to relief. (Emphasis in the original.) *Id.*

¶ 27    The Act contemplates the filing of only a single petition. *People v. Jackson*, 2021 IL 124818, ¶ 27 (citing *People v. Robinson*, 2020 IL 123849, ¶ 42; 725 ILCS 5/122-3 (West 2014) ("Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived.")). However, the bar against a successive filing will be relaxed when a defendant raises either (1) a constitutional claim by satisfying the cause-and-prejudice test (725 ILCS 5/122-1(f) (West 2020)), or (2) a claim of actual innocence. *Jackson*, 2021 IL 124818, ¶ 27 (citing *Robinson*, 2020 IL 123849, ¶ 42 (citing *People v. Edwards*, 2012 IL 111711, ¶ 23)).

¶ 28    To meet the cause-and-prejudice test for a successive petition, a petitioner must " 'submit enough in the way of documentation to allow a circuit court to make that determination.' " *People v. Smith*, 2014 IL 115946, ¶ 35 (quoting *People v. Tidwell*, 236 Ill. 2d 150, 161 (2010)). Both elements of the cause-and-prejudice test must be met for the petitioner to prevail. *People v. Pitsonbarger*, 205 Ill. 2d 444, 464 (2002). The cause-and-prejudice test is a "more exacting standard" than the " 'gist' standard" under which initial postconviction petitions are reviewed.

*People v. Conick*, 232 Ill. 2d 132, 142 (2008). We review *de novo* the trial court's denial of leave to file a successive petition alleging actual innocence. *Robinson*, 2020 IL 123849, ¶ 40.

¶ 29    To establish a claim of actual innocence, the supporting evidence must be (1) newly discovered, (2) material and not cumulative, and (3) of such conclusive character that it would probably change the result on retrial. *Id.* ¶ 41. Within the context of an actual innocence claim, "newly discovered" evidence is evidence that was "discovered after trial and that the defendant could not have discovered earlier through the exercise of due diligence." *Id.* ¶ 42. The conclusive nature of the evidence is the most important factor. *Edwards*, 2012 IL 111711, ¶ 40 (citing *People v. Washington*, 171 Ill. 2d 475, 489 (1996)). In essence, to meet the conclusiveness element, the proffered new evidence must "raise the probability that, in the light of the new evidence, it is more likely than not that no reasonable juror would have convicted petitioner." *Id.* We review the trial court's dismissal of a postconviction petition at the second stage *de novo. People v. Bass*, 2018 IL App (1st) 152650, ¶ 13 (citing *Pendleton*, 223 Ill. 2d at 473).

¶ 30    Defendant challenges appointed postconviction counsel's assistance. The right to the assistance of counsel at trial is derived from the sixth amendment of the United States Constitution (U.S. Const., amend. VI), applicable to the states through the fourteenth amendment (U.S. Const., amend. XIV). *People v. Ballard*, 206 Ill. 2d 151, 171 (2002). By contrast, the assistance of counsel in postconviction proceedings "is a matter of legislative grace and favor which may be altered by the legislature at will." (Internal quotation marks omitted.) *People v. Owens*, 139 Ill. 2d 351, 364 (1990). It is also important to note that, unlike the provisions of the Act, there is no express statutory right to the assistance of counsel when filing a petition pursuant to section 2-1401 of the Code. *People v. Stoecker*, 2020 IL 124807, ¶ 36.

¶ 31 Since the right to counsel in postconviction proceedings is derived from a statute rather than the Constitution, postconviction petitioners are guaranteed only the level of assistance that the statute provides. *Id.* Section 122-4 of the Act (725 ILCS 5/122-4 (West 2020)) and Supreme Court Rule 651 (Ill. S. Ct. R. 651 (eff. July 1, 2017)) provide postconviction petitioners with only "a *reasonable* level of assistance" in postconviction proceedings and not the same level of assistance that the Constitution guarantees to defendants at trial. (Emphasis in the original.) *Owens*, 139 Ill. 2d at 364.

¶ 32 To ensure this level of assistance, Rule 651(c) imposes three duties on appointed postconviction counsel. *People v. Perkins*, 229 Ill. 2d 34, 42 (2007). Pursuant to the rule, either the record or a certificate filed by the attorney must show that counsel (1) consulted with the petitioner to ascertain his contentions of constitutional deprivations; (2) examined the record of the trial proceedings; and (3) made any amendments to the filed *pro se* petitions necessary to adequately present the petitioner's contentions. Ill. S. Ct. R. 651(c) (eff. July 1, 2017); *Perkins*, 229 Ill. 2d at 42. The purpose of the rule is to ensure that postconviction counsel shapes the defendant's claims into a proper legal form and presents them to the court. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 18 (citing *Perkins*, 229 Ill. 2d at 44). Substantial compliance with Rule 651(c) is sufficient. *Id.* Whether counsel fulfilled her duties under Rule 651(c) is also subject to *de novo* review. *People v. Suarez*, 224 Ill. 2d 37, 41-42 (2007).

¶ 33 "The filing of a Rule 651(c) certificate gives rise to a rebuttable presumption that postconviction counsel provided reasonable assistance." *Profit*, 2012 IL App (1st) 101307, ¶ 19. "It is defendant's burden to overcome this presumption by demonstrating his attorney's failure to substantially comply with the duties mandated by Rule 651(c)." *Id.* We review *de novo* whether counsel substantially complied with Rule 651(c). *Bass*, 2018 IL App (1st) 152650, ¶ 13.

¶ 34    Here, the record reveals that defense counsel obtained multiple continuances to review the record, meet with defendant, and conduct legal research. She then filed a Rule 651(c) certificate, raising a rebuttable presumption that she provided reasonable assistance. Defendant thus has the burden to overcome this presumption by showing that counsel failed to "substantially" comply with the requirements of Rule 651(c). *Profit*, 2012 IL App (1st) 101307, ¶ 19.

¶ 35    Defendant's first basis for his unreasonable assistance contention is that postconviction counsel failed to properly recharacterize his *pro se* postconviction petition to avoid dismissal for lack of standing. Defendant correctly concedes that, at the time he filed his *pro se* postconviction petition, he had fully served his sentence and thus did not have standing to file any further postconviction petitions. See *Johnson*, 2021 IL 125738, ¶ 37. Nonetheless, defendant argues that appointed counsel could have "circumvented [defendant's] lack of standing" by recharacterizing his postconviction petition as a petition for relief from judgment pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2020)). Defendant thus reasons that her failure to do so constituted unreasonable assistance. Defendant's contention of error is unavailing.

¶ 36    First, defendant's argument is inconsistent with the requirements under Rule 651(c). We construe supreme court rules in the same manner as statutes. *Wells Fargo Bank, N.A. v. Simpson*, 2015 IL App (1st) 142925, ¶ 35 (citing *Robidoux v. Oliphant*, 201 Ill. 2d 324, 332 (2002)); see also Ill. S. Ct. R. 2, committee comments (rev. July 1, 1971) ("Paragraph (a) makes it clear that the same principles that govern the construction of statutes are applicable to the rules."). Accordingly, when interpreting a supreme court rule, we must ascertain and give effect to the intent of the drafters (*i.e.*, our supreme court). *Robidoux*, 201 Ill. 2d at 332. The most reliable indicator of the court's intent is the rule's actual language, which should be given its plain and ordinary meaning. *Id.* It is appropriate to employ a dictionary to ascertain the meaning of an

otherwise undefined word or phrase. *Landis v. Marc Realty, LLC*, 235 Ill. 2d 1, 8 (2009). The construction of a court rule is a question of law; accordingly, our standard of review is *de novo*. *In re Estate of Rennick*, 181 Ill. 2d 395, 401 (1998).

¶ 37 Here, Rule 651(c) requires postconviction counsel to certify that she has, *inter alia*, "made amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. Rule 651(c) (eff. July 1, 2017). "Amendment" is defined in part as a "formal and usu[ally] minor revision or addition proposed or made to a *** pleading, order, or other instrument; specif[ically], a change made by addition, deletion, or correction; esp[ecially], an alteration in wording." Black's Law Dictionary 101 (12th ed. 2024). Defendant's suggestion that postconviction counsel had a duty to refile his claim under section 2-1401 would distort the definition of amendment beyond its plain and ordinary meaning.

¶ 38 Nonetheless, defendant argues that postconviction counsel has a "responsibility" of determining whether those claims would be better raised in a different type of pleading. Defendant relies primarily on *People v. Stoffel*, 239 Ill. 2d 314 (2010). *Stoffel*, however, does not advance defendant's claim. At the outset, the primary[2] issue presented in *Stoffel* was whether "a trial court's decision *not* to 'recharacterize' a pleading filed by a *pro se* defendant as a postconviction petition may be reviewed for error." *Id.* at 316. No such issue is present in this case.

¶ 39 Moreover, a close examination of the factual context of *Stoffel* reveals that it is highly distinguishable from this case. There, the defendant filed a "petition for relief from judgment" pursuant to the state and federal constitutions, as well as "section 2-1401 of the Code ***." *Id.* at 317. Appointed counsel, however, advised the court that the petition was a postconviction petition

___

[2] The other issue was a constitutional challenge based upon the trial court's use of the " 'waste product' " from manufacturing methamphetamine in determining the total weight of the substance for sentencing purposes. *Stoffel*, 239 Ill. 2d at 330. This issue is not present here.

on three separate occasions (December 2006, February 2007, and April 2007). *Id.* at 318-19. In addition, at a March 2007 hearing at which defendant (but not defense counsel) was present, defendant also stated that his filing was a postconviction petition. *Id.* at 318. At that same hearing, the court continued the cause to April 2007 for counsel's response to the State's motion to dismiss and the filing of a "651-C Certificate." *Id.* at 319. Although the State filed a motion to dismiss defendant's "2-1401" petition in December 2006, the State did not object to defense counsel's or defendant's characterizations of the filing at any hearing. *Id.* at 317-19.

¶ 40 Defense counsel subsequently filed two supplemental postconviction petitions and Rule 651(c) certificates. *Id.* at 319. Counsel also filed a response to the State's motion to dismiss, arguing in part that "the State erroneously assumed defendant's petition fell under section 2-1401 when, in fact, as supplemented, it was a postconviction petition." *Id.* The State filed a motion to strike the defendant's supplements to the petition and his response to the motion to dismiss, arguing that, since the petition was labeled a section 2-1401 petition, counsel could not "supplement a postconviction petition that was never filed." *Id.* at 320.

¶ 41 After taking the matter under advisement, the trial court granted the State's motion to dismiss, finding in relevant part that "the defendant's attorney cannot caption his supplemental pleading as a post-conviction petition and thereby magically transform" a section 2-1401 petition into a postconviction petition. *Id.* at 321.

¶ 42 Our supreme court, however, disagreed, agreeing with the appellate court's conclusion that the trial court treated the defendant's pleading as a postconviction petition that had survived the first stage of the postconviction proceedings when it appointed counsel to represent the defendant and ordered the defendant's counsel to file a Rule 651(c) certificate. *Id.* at 327.

¶ 43     The court recounted that, despite the fact that the court had already deemed the defendant's filing as a postconviction petition, the court's dismissal order found that the petition could only be considered a section 2-1401 petition because, according to the trial court, "defense counsel could not 'magically transform' [the] defendant's pleading." *Id.* at 329. The court pointed out, however, that counsel did not try to magically transform the pleading; instead, "the trial court itself had previously determined that the pleading was a postconviction petition." *Id.* The court did comment, "Of course, it is possible that even after a pleading has been deemed a postconviction petition, further investigation by counsel will reveal that the substantive claims in the petition would be more appropriately addressed in another procedural vehicle." *Id.* The court, however, added, "No argument has been made that such a situation exists here." *Id.*

¶ 44     The court affirmed the appellate court's judgment reversing the trial court's dismissal, but on different grounds: "the trial court failed to offer any reasonable basis for treating the pleading as a section 2-1401 petition after the pleading had *already* been 'recharacterized' as a postconviction petition and survived summary dismissal." (Emphasis in the original.) *Id.* at 329.

¶ 45     Setting aside whether the *Stoffel* court's statement (*i.e.*, that counsel's investigation may possibly indicate that a petition's claims should be raised in another procedural vehicle notwithstanding a trial court's prior recharacterization of a *pro se* pleading) was *dicta*, defendant's argument on this point is without merit. The issues in *Stoffel* concerned whether (1) a trial court's failure to recharacterize a *pro se* postconviction filing is reviewable on appeal and (2) whether the "waste" products from methamphetamine manufacturing should be included in the total weight of the substance for the purposes of sentencing. *Id.* at 316, 330. We cannot discern a reasonable link between either of those two issues in *Stoffel* and the issue raised in the present case. Our conclusion is further buttressed by the *Stoffel* court's statement immediately thereafter that *no party* had

15

argued that "such a situation" (*i.e.*, that postconviction counsel had sought to raise the claims in another procedural vehicle) existed in that case. The decision in *Stoffel* thus does not support defendant's argument that Rule 651(c) imposes a duty on postconviction counsel—who is appointed pursuant to the Act and not section 2-1401—to withdraw a *pro se* postconviction petition and file a new petition under section 2-1401 of the Code. See also *Stoecker*, 2020 IL 124807, ¶ 36 (no statutory right to the assistance of counsel when filing a section 2-1401 petition).

¶ 46 Furthermore, we disagree with defendant's lengthy argument concerning the dismissal of his petition challenging his conviction in case number 06 CR 0325. Case number 06 CR 0325 is not before this court; case number 06 CR 0327 is the *only* trial court case number listed on defendant's *pro se* notice of appeal, and our records do not indicate any subsequent amendment of that notice to include another trial court case number (or a motion to consolidate appeals).[3] Defendant's reliance upon *People v. Rivera*, 198 Ill. 2d 364 (2001); *Bailey*, 2017 IL 121450; and *People v. Volkmar*, 363 Ill. App. 3d 668 (2006); is unavailing because those cases concerned a postconviction petition from a single criminal case. See *Rivera*, 198 Ill. 2d at 366; *Bailey*, 2017 IL 121450, ¶ 4; and *Volkmar*, 363 Ill. App. 3d at 669. Here, by contrast, defendant's petition raised claims with respect to two separate criminal cases. Therefore, *Rivera*, *Bailey*, and *Volkmar* do not alter our holding.

¶ 47 Defendant also contends that postconviction counsel provided unreasonable assistance because she failed to supplement his *pro se* postconviction petition with additional details regarding the alleged criminal conduct of O'Brien and Hudak. Defendant concedes that he did not detail the officers' specific actions in his case until he filed a *pro se* supplemental postconviction

---

[3] Our records indicate that defendant's appeal of case number 06 CR 0325 has been docketed in this court as appellate number 1-24-1088. We may of course take judicial notice of our own records. See *People v. Eubanks*, 283 Ill. App. 3d 12, 24 (1996).

petition. Nonetheless, defendant argues that postconviction counsel provided unreasonable assistance because she "inexplicably failed to file an amended pleading" that would have included this additional information. Defendant's claim on this point is meritless.

¶ 48 Here, defendant agrees that he lacks standing to bring a claim under the Act because, at the time he filed his *pro se* postconviction petition, he had completed his sentence and was no longer in custody for the offense he was challenging in his petition. See *Johnson*, 2021 IL 125738, ¶ 37. Furthermore, lack of standing is an "incurable defect" (*People v. Henderson*, 2011 IL App (1st) 090923, ¶ 15) warranting summary dismissal at the first stage of proceedings under the Act because any such claim "is necessarily 'frivolous' or 'patently without merit' " (*Johnson*, 2021 IL 125738, ¶ 50). As such, postconviction counsel could not amend defendant's pleading to cure defendant's lack of standing, regardless of the merit of his underlying claim. Postconviction counsel does not render unreasonable assistance for failure to present a frivolous or patently nonmeritorious claim. See *People v. Greer*, 212 Ill. 2d 192, 205 (2004) ("Fulfillment of the third obligation under Rule 651(c) does not require postconviction counsel to advance frivolous or spurious claims on defendant's behalf."). Under these circumstances, defendant's claim on this point is unavailing.

¶ 49 For that reason, defendant's reliance upon *People v. Landa*, 2020 IL App (1st) 170851, is unavailing. There, the defendant filed his *pro se* postconviction petition while he was still in prison serving his sentence. *Id.* ¶ 17. Here, by contrast, defendant had already fully served his sentence when he filed his petition. *Landa* is therefore inapt, and defendant's final claim of error fails.

¶ 50                                          CONCLUSION

¶ 51 Defendant's postconviction counsel did not render unreasonable assistance when she failed to (1) recharacterize his *pro se* postconviction petition as a section 2-1401 petition for relief for

judgment and (2) amend his petition to include additional facts supporting his claim of actual innocence. Accordingly, we affirm the judgment of the trial court.

¶ 52    Affirmed.